Edna S. Sollars, Appellee, v. Review Publishing Company, Appellant.

Gen. No. 8,537.

Opinion filed November 4, 1931. Rehearing denied January 7, 1932.

WHITLEY & FITZGERALD and ARTHUR F. DELAHUNTY, for appellant; DOBBINS & DOBBINS, of counsel.

MCDAVID, MONROE & MANN, for appellee.

MR. JUSTICE ELDREDGE delivered the opinion of the court.

Edna Sollars, appellee, recovered a judgment in an action on the case against Review Publishing Co., a corporation, appellant, in the circuit court of Macon county for the sum of $9,664 for injuries sustained as a result of an automobile accident.

The accident occurred on the public cement highway known as Illinois State Route No. 2 on November 12, 1929, in Christian county. In the first count of the declaration it is averred that appellee was riding in an automobile owned by appellant and driven by its servant and was carrying and transporting her so

that she might obtain information necessary to prepare a newspaper article for appellant; that she was a totally blind person which fact the defendant and its servant well knew; that she was riding in said automobile at the defendant's invitation and request and was at all times in the exercise of due care for her own safety; that by the negligence and improper conduct of the defendant by its said servant said automobile overturned and upset by means whereof plaintiff was injured permanently and necessarily incurred great expense to the amount of $1,000 for nurses, attendants, doctors and hospital services in endeavoring to be cured.

In the second count there are additional averments to the effect that appellant was the owner and publisher of a certain newspaper called "The Decatur Daily Review," published in the City of Decatur, and that appellant requested and directed the plaintiff to prepare an article for its newspaper, said article to be based on data and information to be secured by appellee in the vicinity of the City of Shelbyville in Shelby county; that on said day appellant by its servant took appellee in its said automobile for the purpose of conveying her from her home in the Village of Moweaqua to said City of Shelbyville to secure the data and information necessary for the newspaper article above mentioned and of thereafter returning her from Shelbyville to her home at Moweaqua.

The third count is substantially the same as the second with the exception that it is also averred therein that appellee was riding in the car upon the mission aforesaid at appellant's invitation and request.

The fourth count is the same as the third count except that it is averred therein that the car was being driven over a slippery road at a speed greater than was reasonable and proper, having regard for the traffic and the use of the way, and so as to endanger

the life and limb of other persons, at, to wit, a speed of 40 miles per hour.

The only plea filed was that of the general issue.

Appellant owns the newspaper called The Decatur Daily Review which is published in the City of Decatur. Appellee at the time of the accident was 52 years of age and lost her eyesight when she was a girl 18 years old. Her vocation was the writing of special articles on different subjects for various newspapers among which was The Decatur Daily Review. She had also, for a number of years prior to the accident, contributed local items concerning events in and about the Village of Moweaqua to The Decatur Daily Review. She had written special feature articles for various newspapers among which were the Chicago Daily News and the St. Louis Post-Dispatch and had also written a number of special articles for the Decatur Daily Review. She received no salary for any of the work which she did for appellant but was paid $3 per column for such articles as were accepted by appellant. Mr. D. L. Davis was State editor for appellant during the time and all her business for the newspaper was transacted through him. She testified that Davis told her she would be paid so much per column for material which was accepted but would not be paid for her time; that sometimes her material was rejected; that Davis told her if anything important or unusual should happen she was not to wait and write in, but to telephone it in at once so that it would get out in the first edition of The Decatur Daily Review; that there was nothing said about rules and regulations as to hours of work, or time of work, or anything of that kind; that he told her she could write for any other newspaper or periodical she cared to except a Decatur publication; he also told her that she should branch out to other towns and further into the country and she explained to him it would be impossible for

her to do so without assistance as she had no car and was blind whereupon Davis told her to procure what assistance she needed and the Review would pay the expenses at the rate of five cents per mile for her assistant which was sometimes done and she sent in each month an itemized statement of such expenses; for two or three years Mr. Sidthorpe was farm editor and she went around several times with him; later Mr. Bailey was sent to her at times. Bailey was a regular employee of appellant and took pictures for the newspaper. Prior to the accident he had taken her on three occasions. Several days prior to the accident she discussed the matter of making a trip to a farm near Shelbyville. She had previously written an article about this farm which appellant had published and she told Davis that she thought the subject justified another article to be illustrated with pictures; he told her that as soon as it could be arranged he would send Bailey to take her to the farm; that on November 9, he telephoned to her and told her he was going to let her have Bailey all day Tuesday and to get all the pictures she could for her stories; she wanted pictures of a very large drove of hogs on this farm and of a very interesting old home; that on November 12, Bailey called for her in an automobile and she with Mrs. Long, a friend of hers, and Bailey started east of Moweaqua and first visited a farm for the purpose of getting information for the story to go with the pictures; they then went to another farm west of Moweaqua for information there about Angora goats and race horses which were to be the subject of an article about that farm; that they then started towards Shelbyville; it had been raining and the pavement was wet and slippery and Mrs. Long requested Bailey to drive slower because the slab was wet and she felt it was dangerous; Whereupon Bailey said to appellee, ''You aren't afraid, are you, Mrs. Sollars?'', to which

she replied, "I couldn't tell but I want you to be very careful" and that it was a short time after that when the accident occurred.

The testimony of appellee is substantially uncontradicted. Davis testified: "I suggested that she go down to the farm near Shelbyville and write the article. Some weeks before that she had written an article touching the same farm. It is the Samuel Tilley farm. She had written an article about Mr. Tilley, and later told me he had a large herd of hogs she thought would be good for another story and pictures. She submitted the first article on the farm at her own volition. I had not told her when to go and get the second or additional article. When I first talked to her she did not tell me when she was going to get it. I may be wrong, but I would say the first article about the Tilley farm was published two or three months before that."

The errors relied on by appellant for the reversal of the judgment are: (1) that appellee was acting as an employee of appellant and was injured through the negligence of a fellow servant; (2) that if she was acting as an independent contractor then Bailey was at the time loaned to her, and was under her control and direction and acting as her servant; (3) that the verdict is excessive; (4) errors in the giving and refusal of instructions.

At times it is very difficult to determine whether the relation between parties is that of master and servant or of principal and independent contractor. Various rules have been laid down by very respectable authority but it is very difficult to formulate any rule which can be applied to every set of facts and circumstances which may appear. In 39 C. J. 35, the rule is announced as follows: "The relation of master and servant exists whenever the employer retains the right to direct the manner in which the business shall be done, as well as the result to be accomplished, or, in

other words, not only what shall be done, but how it shall be done. Inasmuch as the right to control involves the power to discharge, the existence of the power to discharge is essential, and is an indicium of the relationship." In 18 R. C. L. 490, the rule is declared to be: "The relation, whatever term may be used to describe it, exists, it ordinarily is said, whenever one person stands in such a relation to another that he may control the work of the latter and direct the manner in which it shall be done. The essential elements are that the master shall have control and direction not only of the employment to which the contract relates, but of all of its details, and shall have the right to employ at will and for proper cause discharge those who serve him. If these elements are wanting, the relation does not exist. Again, the manner in which payment is made may under some circumstances be decisive of the question, but this is not an invariable criterion by any means." In the case of *Decatur Railway & Light Co. v. Industrial Board,* 276 Ill. 472, it was held: "The right to control the manner of doing the work is the principal consideration which determines whether the worker is an employee or an independent contractor. This work was very simple. No control would ordinarily be required except to direct where the coal should be unloaded, and this control was exercised. There was nothing in the contract indicating that the company surrendered the right to control the manner in which the unloading should be done. It retained the right to discharge Mulverhill on the instant. The method of payment was not inconsistent with a contract of hiring, and the retention of hospital dues and the giving of a pass tended to establish the relation of employer and employee." In *Yeates v. Illinois Cent. R. Co.,* 241 Ill. 205, the court said: "The relation of master and servant exists where the employer has the power to direct what work

the employee shall do and the way and manner in which it shall be done, and has power to remove and discharge him.''

As to what is an independent contractor it is held in 39 C. J. 1315: ''An independent contractor is one who in rendering services exercises an independent employment or occupation and represents his employer only as to the results of his work and not as to the means whereby it is to be done.'' It is held in *Nelson Bros. & Co. v. Industrial Commission,* 330 Ill. 27: ''It is impossible to lay down a hard and fast general rule or state definite facts by which the status of men working and contracting together can definitely be defined in all cases as employees or independent contractors. Each case must depend on its own facts. Ordinarily no one feature of the relation is determinative but all must be construed together. (*Bristol & Gale Co. v. Industrial Com.,* 292 Ill. 16.) The right to control the manner of doing the work is the principal consideration which determines whether the worker is an employee or an independent contractor. (*Decatur Railway and Light Co. v. Industrial Board,* 276 Ill. 472.) The test of the relationship is the right to control. It is not the fact of actual interference with the control, but the right to interfere, that makes the difference between an independent contractor and a servant or agent. An independent contractor is one who undertakes to produce a given result but in the actual execution of the work he is not under the orders or control of the person for whom he does the work but may use his own discretion in things not specified. An independent contractor is one who contracts to do a specific piece of work, furnishing his own assistance and executing the work either entirely in accordance with his own ideas or in accordance with a plan previously given him by the person for whom the work is done, without his being subject to the orders of the

latter in respect to the details of the work. (*LaMay v. Industrial Com.*, 292 Ill. 76; *Meredosia Drainage District v. Industrial Com.*, 285 id. 68). If the person for whom the work is being done retains the right to control the details and the manner and method by which the work is to be done the relation of employer and employee exists. The fact that payment is to be made by the piece or the job or the day or the hour does not necessarily control where the workman is subject to the control of the employer as an employee and not as a contractor. *Franklin Coal Co. v. Industrial Com.*, 296 Ill. 329; *Amalgamated Roofing Co. v. Travelers Ins. Co.*, 300 id. 487. . . . The real test was the right to control the manner of doing the work, and no such right was reserved." It was held in the case of *Besse v. Industrial Commission*, 336 Ill. 283: "An independent contractor is one who renders service in the course of an occupation representing the will of the person for whom the work is done only as to the result of the work and not as to the means by which it is accomplished."

In the case at bar appellant reserved no control over appellee as to the way or manner or method she might use in writing the special articles in question. The only reservation which appellant had was to either accept or reject the work of appellee as it saw fit and pay her or not for her labor as it saw fit. Appellant had no control over the way appellee went about writing the article in question, the way her ideas were expressed in words, the length of the article or the things described. If, after the work was done by appellee, it met with the approval of appellant it could accept it or reject it, pay for it or refuse to pay for it as it saw fit. In our opinion such facts are entirely inconsistent with the theory of master and servant. The work of a descriptive writer is a highly specialized vocation. If one requested an artist to paint a portrait of a person or to paint a picture of an existing thing it certainly

could not be said that the artist became the servant of such person while in the process of doing such work. The difference between such a case and the case at bar is that appellee was to paint her picture in words instead of colors.

The second contention of appellant that if it be held that appellee was not the servant of appellant, then Bailey, the driver of the car, was, under the circumstances shown, a servant loaned to her by appellant and while he was being used by her appellant would not be liable for his negligence. The plea of general issue admits that Bailey was the servant of appellant, therefore, this contention cannot be sustained.

The first four instructions given for appellee allege the substance of each of the four counts respectively and each concludes that if the jury find from the preponderance of the evidence under the instructions of the court that the plaintiff has proved her case as alleged in the respective counts of the declaration then the jury should find the defendant guilty. The first objection to these instructions is that it was error to embrace the allegations of the declaration in the instructions as the reiteration of the averments of the declaration in four successive instructions tended to emphasize the facts therein alleged and also to mislead the jury. It must be conceded that such instructions have been criticized to some extent (*Reivitz v. Chicago Rapid Transit Co.*, 327 Ill. 207; *Attabella v. Krzepton*, 233 Ill. App. 320) but so far as we are informed the giving of them has never been held to be reversible error. But, if error, the jury were fully instructed as to the issues in the case and in our opinion could not have been misled or confused thereby. It is also urged that these instructions are erroneous because they direct a verdict and (a) ignore the defense that appellee was a fellow servant; (b) ignore the defense that if she was not a fellow servant Bailey was loaned to appellee and became her servant and

(c) that she assumed the risk. We have held as a question of law that under the conceded facts in this case appellee was not a servant of appellant. We have also held that whether Bailey was loaned to appellee is not a defense of which appellant could avail itself. As to the defense of assumed risk this was not presented on the trial in the court below and cannot be raised for the first time in this court.

The fifth instruction given on behalf of appellee informed the jury that in determining the amount of damages the plaintiff is entitled to recover in this case, if any, the jury have a right to, and they should, take into consideration all the facts and circumstances as proven by the evidence before them; the nature and extent of plaintiff's physical injuries, if any, so far as the same are shown by the evidence; her suffering in body and mind, if any, resulting from such physical injuries, and such future suffering and loss of health. if any, as the jury may believe from the evidence before them in this case, she has sustained or will sustain by reason of such injuries; her loss of time and inability to work, if any, on account of such injuries; all expenses incurred by her for doctor's and hospital bills, if any, while being treated for such injuries; and may find for her such sum as in the judgment of the jury, under the evidence and instructions of the court in this case, will be a fair compensation for the injuries she has sustained, or will sustain, if any, so far as such damage and injuries, if any, have been shown by the evidence in this case. It is contended that this instruction is erroneous because it tells the jury that they should take into consideration all the facts and circumstances as proven by the evidence before them and that this necessarily includes the fact that appellee was blind. A fair construction of this instruction is that it refers only to a question of damages for injuries received as a result of the accident as have been proven by the evidence. Any other construction would

be very strained and hypercritical. *Wolczek v. Public Service Co. of Northern Illinois,* 342 Ill. 482. That the jury could not have been misled in this regard is shown by the giving of the eighth, twelfth and fifteenth instructions offered on behalf of appellant. The eighth instructs the jury that they should not be influenced by any matters of sympathy which they may have, as men, for the plaintiff and that matters of sympathy or compassion are not proper for their consideration. The twelfth charged the jury that damages, in order to be recovered, must be proved by a preponderance of evidence in the case, and a verdict for damages cannot be based upon guess, conjecture or speculation. The fifteenth instructed the jury that no damages can be awarded the plaintiff on account of sicknesses, or illnesses, or diseases which she might have had prior to the accident, or the result of such illnesses or sicknesses afterwards, or to accrue to her as the result of previous sicknesses or diseases and no damages can be awarded to plaintiff not the sole and direct result of the injury complained of in the declaration, and the same must be proved by a preponderance of the evidence in the case. Instruction No. 5 is also complained of in that it allows the jury to assess all expenses incurred by her for doctors' and hospital bills, if any, while being treated for her injuries, on the ground that there was no proof of what were the customary and reasonable charges thereof. In this, counsel are apparently mistaken as Dr. Sparling testified that the usual, fair, reasonable and customary charge for services, medical and hospital, such as were rendered to appellee was $664. This testimony was all admitted without objection by appellant, nor was any motion made to exclude it but was permitted to go to the jury uncontradicted.

It is also claimed that the court erred in refusing to give instructions 19, 22, 23, 24 and 25 offered by appellant. No. 19 is fully covered by instruction 16 given

on behalf of appellant. Instruction No. 22 contained nothing but what had already been referred to in instructions 8, 12 and 15 given for appellant. Instruction No. 24 refers to the care required by the driver of the car and is covered by instruction No. 16 given for appellant. Refused instruction 25 is but a proposition of law and not applied to any particular facts in the case.

One of the errors assigned is that the verdict is excessive, but no argument is advanced in support of this contention. There is no conflict in the evidence as to the injuries sustained by appellant as no evidence was introduced or offered to be introduced by appellant in regard thereto. That appellee was very seriously injured is not contested.

In our opinion there is no reversible error in the case and the judgment is therefore affirmed.

*Affirmed.*