Ada Smoot, Appellee, v. A. G. Hollingsworth, Appellant.

Gen. No. 8,559.

at the October term, 1931.          Heard in this court
Opinion filed February 1, 1932.

MURPHY O. TATE, LEO M. TARPEY and WILBUR R. WICKS, for appellant; WILBUR R. WICKS, of counsel.

H. M. STEELY and H. M. STEELY, JR., for appellee.

MR. JUSTICE ELDREDGE delivered the opinion of the court.

Ada Smoot, appellee, recovered a judgment against A. G. Hollingsworth, appellant, in the circuit court of Vermilion county to the amount of $7,500 for personal injuries sustained by her in an automobile accident. The case was originally brought against appellant and Oakley Hollingsworth, his son. During the trial the suit was dismissed as to the defendant Oakley Hollingsworth. In the first count of the declaration it is charged that on the 11th day of February, 1930, at about 7:15 o'clock p. m. while the plaintiff was standing on the south side of West Raymond avenue where the same intersects Vermilion street in the City of Danville and at a point two feet west of the west street

car track and so standing and waiting at said point with two other persons for the purpose of becoming a passenger on a southbound electric street car and while exercising all due care for her own safety and as the street car was about to stop for the purpose of allowing the plaintiff to enter the same, the defendant A. G. Hollingsworth, who then and there owned an automobile, by and through his agent, Oakley Hollingsworth, then and there so carelessly, negligently and recklessly drove said automobile on the west side of Vermilion street in a southerly direction and in front of said street car that he thereby caused said automobile to be brought into violent collision with the plaintiff and she was thrown with great force and violence in a southeasterly direction and in front of said street car and onto the pavement and was greatly bruised and permanently injured, her clothing torn and damaged, was hindered and prevented from attending to her business as a housewife and from attending to and transacting her business as a supply teacher in the city schools in the City of Danville and was compelled to spend large sums of money in endeavoring to be cured. The second count includes a charge of negligence in that the automobile was driven at a high and dangerous rate of speed, to wit: 35 miles per hour, and greater than was reasonable and proper, having regard to the traffic and the use of the way, and so as to endanger the life or limb and injure the plaintiff. In the third count it is charged that the defendant by and through his agent Oakley Hollingsworth then and there so wilfully and wantonly drove, managed and operated said automobile on the west side of Vermilion street at a high and dangerous rate of speed of, to wit: 35 miles an hour and greater than was reasonable and proper having regard to the traffic and the use of the way, etc.

The defendant, A. G. Hollingsworth, filed the plea of the general issue and two special pleas. The first

special plea in substance alleges that said defendant at the time of the said supposed grievance above laid to his charge, in each count of the amended declaration, was not in possession of and did not drive, operate or control said automobile. The second special plea alleges in substance that said Oakley Hollingsworth in driving and operating the automobile was not the agent or servant of the defendant.

It is first strenuously insisted by counsel for appellant that the evidence in the record does not tend to establish the relation of master and servant or principal and agent between the defendant and his son Oakley Hollingsworth at the time of the accident. The defendant testified on direct examination as follows:

"Q. And on the day of this accident, February 11, 1930, did you have any visitors or guests at your house in Bismarck?

A. Two boys from southern Illinois were guests of the family and they had been at my house about two nights. They were on this trip with my son when the accident occurred.

Q. Now, that afternoon or that day what, if anything was said by you to your son about taking the automobile and taking them anywhere or entertaining them?

A. Well, I told him that morning to entertain the boys during the day and take the car that night and bring the boys to the show.

Q. And was it in pursuance of that he took the car and was bringing them down to the show?

A. Well, I suppose it was."

And on cross-examination he testified as follows:

"My son was nineteen years of age at the time the accident happened. I kept the car for business and pleasure. I was not with my son on the night in question and was not driving the car. He called me a short time after the accident. Taylor Barger and Harley Frayser were the boys visiting at our home. They are not related to me or my son. They had been at my

home about two nights. They were visiting the family. There were other people in the car besides these two boys from out of town. There were five or six others from Bismarck and they were not visiting at our house.''

Oakley Hollingsworth was the only witness produced by the defendant and his entire testimony in substance is as follows: ''I was driving the car at the time of the accident in question. My father sent me to the show with these boys. He told me to go that morning. My father said nothing about taking the girls to the show.''

The doctrine has been definitely established in this State that the mere ownership of an automobile purchased by the father for the use and pleasure of himself and family does not render him liable in damages to third persons for injuries sustained through the negligence of his minor son while operating the same on a public highway in pursuit of the latter's own business or pleasure whether with or without his father's permission, but the liability, if any, rests upon the principle of agency. *White v. Seitz,* 342 Ill. 266. The contention in the case at bar is that Oakley Hollingsworth was not engaged on any business of his father in taking the family guests to the theater in the automobile. To this we cannot agree. The son was acting under specific directions of his father and was as much an agent of his father in driving the automobile at the time in question as a hired chauffeur would have been. *Gates v. Mader,* 316 Ill. 313.

It is urged that the court erred in refusing to direct a verdict under the third amended count charging wilfulness. The motion made at the close of the plaintiff's evidence and repeated at the close of all the evidence is as follows: ''Defendant, A. G. Hollingsworth, in writing, moves the court to exclude the evidence, and to direct the jury to return a verdict for the defendant, and in support of said motion alleged par-

ticularly the following reasons:" This motion goes to all the counts in the declaration and as the evidence fully sustains the first and second counts the trial court had no authority to direct a verdict for the defendant. No such motion was made specifically as to the third count so the court had no opportunity of eliminating that count from the declaration if it had appeared proper to do so. *Scott v. Parlin & Orendorff Co.,* 245 Ill. 460; *Heidenreich v. Bremner,* 260 Ill. 439.

It is claimed by defendant that there is a variance between the second count of the amended declaration and the proof adduced to sustain it in that the proof fails to show that the automobile in question was driven or caused to be driven by said defendant. The allegation in the second count charges, "said defendants then and there so carelessly, negligently and recklessly drove or caused to be driven an automobile, etc." The plaintiff did not dismiss her suit as to the defendant Oakley Hollingsworth until after she rested her case. This objection to the second count of the declaration was one of the causes alleged in support of the motion for a directed verdict and as no separate motion was made specifically as to this count the question is controlled by the same rule as above announced as to the third count.

It is also urged that the plaintiff was guilty of contributory negligence in that she should have seen the automobile approaching and have gotten out of the way. She was where she had a right to be, standing on the crossing waiting to board the street car which was about to stop to permit her and her companions to enter. It is the duty of a driver of an automobile not to pass a street car which is discharging or taking on passengers, within a distance of 10 feet from the lowest step of the car, Cahill's St. ch. 95a, ¶ 41; ch. 121, sec. 241, Smith-Hurd Rev. Stat. She had no reason to anticipate that the automobile would be driven against

her while she was standing there in plain sight. There was ample room for the automobile to have avoided hitting the plaintiff. In any event, the question of contributory negligence was for the jury to determine.

Where a verdict is manifestly just and proper and a liability clearly shown, this court will not reverse the judgment on technical errors or those which do not violate some substantial rights guaranteed by the law and prejudicial to the rights of the party.

Instruction No. 5 given on behalf of the plaintiff is criticized because it directs a verdict and omits the question as to whether or not the driver of the automobile was the agent of appellant and in furtherance of some business or duty owing to the appellant at the time and place in question. The proofs show without contradiction that the driver of the automobile was the agent of appellant. Instruction No. 1 sets out the third count of the amended declaration substantially in full. Instruction No. 2 sets out the allegations in the second count and instruction No. 6 sets out those of the first count. It is not good practice to set out at length all the allegations in the declaration and such instructions have been criticized and in some cases where the evidence is close and conflicting it may be held reversible error to give such instructions on the ground that the reiteration of all the allegations in the declaration might unduly influence the jury, but where, as in the case at bar, there is no conflict in the evidence and the liability of the defendant is clearly shown, the giving of such instructions will not constitute reversible error. *Sollars v. Review Publishing Co.*, 264 Ill. App. 207. Moreover, in this case the court gave an instruction on behalf of defendant to the effect that the declaration is merely the unsworn statement of plaintiff's case and neither proves, nor tends to prove, any allegation therein contained. The criticism directed to instruction No. 4 given on behalf of appellee is without merit.

Defendant assigns as error the refusal of the court to give eight instructions offered by him. The first refused instruction informed the jury that the burden was upon the plaintiff to prove that at the time of the accident Oakley Hollingsworth was acting as the agent or servant of his father and in pursuance of some business or duty of his father and that it was not sufficient under the law that said Oakley was engaged in some act merely to further his father's interests. This instruction was clearly misleading and liable to confuse the jury. The proofs showed that Oakley Hollingsworth was acting as the agent of his father and in pursuance of some business of his father and that was all that was required. The second refused instruction was fully covered by the eighth given instruction as was also the third refused instruction. The fourth refused instruction tells the jury that a father who provides an automobile for the pleasure of his family is not liable for the negligence of a member of his family while driving his automobile unless he was engaged in some business or duty of the father at the time or place of the accident in question. This is an abstract proposition of law and under the facts in this case as above explained was not applicable. Refused instructions 5, 6, 7 and 8 were practically repetitions of the other refused instructions.

It is also urged that the damages are excessive. At the time of the injury plaintiff was employed by the City of Danville as a supply teacher, that is, a teacher whose duty it is to take the place of any other teacher in any grade or high school who should be absent for any cause and teach in her place during such absence, and had been earning $50 per month for 13 months prior thereto. She sustained a compound comminuted fracture of the left ankle consisting of two large fractures and a number of small ones besides a number of bruises and contusions on other parts of the body.

She was confined in the hospital for three months and two weeks and after she left the hospital went to her mother's home where she remained for a further length of time and had to use crutches until about September 1, 1930, and used a cane for about four months thereafter. Up to the time of her trial she had not been able to do all her housework. Her leg was swollen and it has to be bandaged with an elastic bandage all the time. She cannot stand on it for any length of time. The leg is half an inch shorter than the other one which makes her lame. She had to give up her position as teacher because that required constant standing and walking up and down steps which she is unable to do. Thirteen months of school work had elapsed at the time of the trial since the accident. Her expenses at the hospital were $401.75, her doctor's bill was $500, and for extra medicine and bandages she had paid $10. The damages to her clothing were $60. In addition to the above loss of earning power and expenses, she suffered pain and still suffers pain. She is deprived of earning anything from her vocation as teacher for which she was educated and fitted, at least in the near future. The shortening of her leg of course is permanent. Her injuries are not disputed by any evidence and were not controverted on the trial. The jury heard the evidence and the trial court approved its verdict. The jury were not instructed that they could allow any vindictive or punitive damages. Under the above circumstances we would not be justified in holding the amount of damages to be excessive.

Counsel for appellant claim that they were unduly restricted in their cross-examination. The plaintiff put the defendant A. G. Hollingsworth on the stand as her own witness and on cross-examination the following took place:

"Q. Now, on the night in question, the night of February 11, 1930, at the time of this accident, was Oakley Hollingsworth transacting any business for you?

A. No, sir.

Mr. Steely: Objection and motion that the question and answer be stricken out.

Mr. Wicks: That's the material question as far as this defendant is concerned. I would like to be heard on that point if there is any question about it.

Mr. Steely: Move to exclude that question and answer.

Mr. Wicks: That's the whole meat in the case as to whether or not this man was on any business for his father . . .

The Court: Objection sustained to that question, purely a conclusion."

The court was clearly right in its ruling. There was an evident intent to confuse the witness as to the word "business." If the defendant directed his son to take his guests in the automobile to the theater then the son was transacting business for his father in the sense that he was acting as the agent for his father in doing the thing he was commanded to do and he could not avoid the effects of such direction and command by stating that his son was not transacting any business for him. This would be a pure conclusion and at variance with the facts. The following questions were also asked the witness on his cross-examination:

"Q. Then your son didn't come down here purposely to bring Taylor Barger and Harley Frayser?

Mr. Steely: Object to that.

The Court: Objection sustained.

Q. I will ask you further—this is cross-examination—if it isn't a fact that he was attending to his own business exclusively?

Mr. Steely: Object.

The Court: Objection sustained.

Q. And I will ask you further if on the night in question the automobile was used solely for the pleasure of your son, Oakley Hollingsworth?

Mr. Steely: Object to that.

The Court: Objection sustained.

Q. And further, if the machine wasn't kept at that time for pleasure purposes at 7:15 on the night of February 11, 1930?

Mr. Steely: That's objected to.

The Court: Yes, objection sustained.''

It needs no discussion to show that the above questions were wholly incompetent. The defendant placed but one witness on the stand and that, Oakley Hollingsworth. We have already quoted a part of his testimony in the fore part of this opinion. After stating that his father directed him to take the boys to the show, the following questions were asked of him on direct examination:

''Q. Were you on any business transaction that night for your father, Oakley?

Mr. Steely: Object to that, calling for a conclusion.

The Court: Yes, tell what his father said, if anything.

(Defendant excepts.)

Q. Were you on any transaction that night involving the buying of stock, hogs or cattle?

Mr. Steely: Object to that.

The Court: Objection sustained.

(Defendant excepts.)

Q. Were you working at any matter that evening for your father, Oakley?

Mr. Steely: Object to that.

The Court: Objection sustained.

(Defendant excepts.)

Q. Were you on any transaction involving any duty for your father on the night of February 11, 1930?

Mr. Steely: Object to that.

The Court: Objection sustained.''

There was no error in the ruling of the court on the objections to these questions.

The cause of action was clearly proven under the first count of the declaration and even if the second

and third counts were defective the defendant did not take proper steps to have them withdrawn from the declaration but on the contrary joined issue thereon and offered instructions which the court gave defining the rights of the defendant under each count. In our opinion there is no reversible error in the record and the judgment of the trial court is affirmed.

*Judgment affirmed.*