Thomas Cooney, Appellee, v. Henry Hughes and Yellow Cab Company, Appellants.

Gen. No. 41,527.

Opinion
filed May 19, 1941.

MILLER, GORHAM, WESCOTT & ADAMS and CHARLES F. WHITE, both of Chicago, for appellants; HERBERT C. DE YOUNG, of Chicago, of counsel.

RYAN, SINNOTT & MILLER, of Chicago, for appellee.

MR. JUSTICE MATCHETT delivered the opinion of the court.

In an action for negligence there was judgment for $3,500 on the verdict of a jury. Defendants say the verdict is excessive, the rulings of the court on evidence prejudicial, the giving and refusing of instructions erroneous, and the conduct of attorney for plaintiff improper. Defendants also urge plaintiff was guilty of contributory negligence.

Plaintiff, a police officer directing traffic at the intersection of Wabash avenue and Monroe street in Chicago, was struck by defendant's cab driven by defendant Hughes January 25, 1938. October 24, 1938, an amended complaint was filed stating the particulars in which defendants were said to have been negligent.

The accident occurred about 12:35 p. m. Wabash avenue runs north and south, Monroe street east and west. The intersection is in what in Chicago is called the "Loop District" where traffic is heavy. Street cars run in Wabash avenue; north over east tracks, south over west tracks. Elevated trains run over the intersection. Traffic is regulated by stop and go lights.

Monroe street is about 55 feet wide, Wabash avenue about 60 to 65 feet from curb to curb. The elevated tracks are built on supporting pillars which stand on either side of the street car tracks. The traffic lights were of three colors—green, amber and red. Plaintiff in the performance of his duties stood as usual on the southwest corner of the intersection.

There is a sharp conflict in the evidence as to the precise way the accident occurred. As stated, plaintiff was on duty at the crossing. It was a clear day. He says he stood about three or four feet west of the westerly street car rail in Wabash avenue and about a foot north of the south crosswalk. Two ladies were walking west across Wabash avenue on the south crosswalk of Monroe street. When they got about to the middle of the southbound car track an eastbound automobile making a right turn from Monroe street south into Wabash avenue was about to bar their way. The amber light flashed indicating north and south traffic was about to be given the right-of-way. The ladies became confused. Plaintiff holding up his right hand stopped the turning automobile. He took a step east, then with his left hand indicated the ladies should proceed. When they had passed safely in front of the standing car he turned east to direct traffic. He was in the act of raising his whistle when the right front fender of defendant's cab (approaching from the north and going at a speed estimated differently by witnesses) struck him. He was assisted to another Yellow Cab and taken to St. Luke's Hospital. This is in substance the testimony of plaintiff.

On the other hand the evidence of defendant Hughes tended to show defendant's cab (driven by him) was moving south in Wabash avenue in the center of three lanes of travel reserved for southbound traffic in Wabash avenue. This lane was next to the southbound car tracks. At the north crosswalk of Wabash avenue the driver waited for the traffic lights to turn green.

When the light changed he proceeded across the intersection at a speed of less than ten miles an hour, when plaintiff suddenly stepped from in front of the automobile (turning from Monroe street) and into the way of defendant's cab and was hit. On defendants' theory plaintiff was guilty of contributory negligence. On plaintiff's theory defendant drove its cab with a degree of negligence almost amounting to wantonness and wilfulness.

We could write at length of incidents related by the several witnesses, the probability of their narrations, etc. but at the end could only come to the view that the issues of negligence of defendant and contributory negligence of plaintiff were for the jury. It is difficult to get the true picture of an accident at a Loop intersection even from the testimony of disinterested witnesses. An accident ordinarily happens in an instant of time. Usually witnesses see only a part of what occurred. This is particularly true where the occurrence is in the Loop with its congested traffic. Plaintiff says he did not see this cab until it hit him. The driver, who knows most about it, is codefendant. He testified by deposition before and also at the trial. His testimony is not entirely consistent. Some of the evidence for plaintiff is also contradictory, some of it improbable. The issues were preculiarly for the jury. The trial judge has approved the verdict. We cannot say it is manifestly against the weight of the evidence. It therefore remains only for us to determine whether the trial was fair and according to law.

Defendants say the trial was not fair. They complain the court erred in admitting in evidence plaintiff's Exhibit No. 13, an X-ray of plaintiff's pelvis taken June 28, 1939, about seventeen months after the accident. The medical testimony for plaintiff tended to show he sustained an injury known as a subluxation of the sacroiliac joint. Prior to taking this particular X-ray, twelve others had been taken which failed to

show injury of this kind. Defendants say the picture now objected to was taken without proof that plaintiff's condition at the time it was taken was the same as just after the accident. There is no merit to this contention.

Dr. Duggan was plaintiff's attending physician. He testified plaintiff sustained a partial dislocation of the sacroiliac joint. On cross-examination he was asked whether a separation of the bones would show in an X-ray. He said, ''Yes, if the X-ray was taken under proper conditions.'' He also said the X-rays which had been taken prior to Exhibit No. 13 (twelve altogether) showed a negative result, because there was no ''traction'' put on it. He was asked if traction did not distort. He replied not if the traction was the same on both sides.

Dr. Vaughan, who took this X-ray, explained how it was done. The view included the pelvis and the last two lumbar vertebra. The patient's back was up against the film, the X-ray tube in front. One laboratory assistant was pulling on the right leg, another pulling on the left leg, the patient himself making counter-resistance holding onto the side of the table so the patient would not be pulled off. Another assistant held his shoulders so as to make the pull on the two legs equal and the distal pull on both legs counteracted by the patient holding onto the table. An assistant held the patient from above—three different pulls. Dr. Vaughan said that the left sacroiliac joint became slowly wider than the right; ''If anything, before the right was a shade darker, a shade wider. Now we have the left becoming wider. It is not a large difference, it is not a big difference but it is a difference, which I think you can see. If any of you do not see it, we can run over the other films again.'' Another film was then handed the witness for comparison, and he explained to the jury the difference. The roentgenologists testifying for defendants said the film did not

show any such injury and explained their reasons to the jury.

The parties did not lack for medical witnesses. It was for the jury who saw and heard to determine the fact.

Defendants say the court also erred in allowing this film to be taken by the jury to its room. The Supreme Court has settled this question contrary to defendant's contention construing section 76 of the former Practice Act. *Chicago & J. Elect. Ry. Co. v. Spence,* 213 Ill. 220; *Kavale v. Morton Salt Co.,* 329 Ill. 445. Section 76 of the old act is retained in the Civil Practice Act as section 67. (Smith-Hurd Ann. Stats., ch. 110, par. 191, p. 586 [Jones Ill. Stats. Ann. 104.067].) We hold there was no error in this respect.

It is said the court erred in allowing evidence to be introduced tending to show that because of a congenital condition in plaintiff's back he was more susceptible to injury from this kind of accident and would require unusual time to recover from it. This evidence was given by Dr. Knoepfler, a roentgenologist. He testified to a general medical opinion that the congenital anomaly of the back, such as plaintiff had, would cause a patient to undergo particular strain when lifting heavy objects; that such a back in case of accident would not be flexible as a normal one. Defendants say this was merely conjectural and should have been excluded as highly prejudicial. They cite *Menifee v. Higgins,* 57 Ill. 50 and *Lyons v. Chicago City Ry. Co.,* 258 Ill. 75. An X-ray picture taken at the Alexian Brothers Hospital on August 20, 1936, showed (so the expert said) a "sacralization" of the transverse processes of the fifth lumbar vertebra. These are sometimes called "butterfly" processes. It was not claimed that the accident caused these. Defendants therefore conclude the evidence was conjectural. Expert evidence of this kind has been held admissible in *Toledo W. & W. R. Co. v. Baddeley,* 54 Ill. 19, and *Donnelly v. Chicago City Ry. Co.,* 235 Ill.

35. The cases cited by defendants are easily distinguishable. Defendants in reply attempt to distinguish this from the *Donnelly* case on the theory that Dr. Knoepfler ''was not an orthopedic surgeon'' and therefore not qualified as an expert. Defendants say the doctor limited his professional work to the taking and interpreting of X-ray pictures. We do not so understand the doctor's testimony. He said his work for plaintiff was so limited, but as to qualifications testified to his education in Munich, his license to practice medicine and surgery in this State and his position with the Alexian Brothers Hospital. The record does not disclose objection was made to his testimony on the ground that he was not qualified. In the absence of such objection the point is waived.

It is said the court erred in permitting evidence to be given of plaintiff's earnings. Plaintiff testified he earned $2,500 per year. No proof of loss of earnings was offered. Defendants say this was prejudicial to them, in particular as the court, instructing the jury, included loss of services with other elements of damage which might be allowed. If the salary of plaintiff was gratuitously paid by the city during his absence this would not warrant any deduction from actual damages which plaintiff was entitled to recover. *O'Brien v. Chicago City Ry. Co.*, 305 Ill. 244; *Hoobler v. Voelpel*, 246 Ill. App. 69, 78–79. Defendants say these cases are not applicable because in each it appeared the employer continued to pay wages as a gratuity while here there is no evidence plaintiff received his wages as a gratuity. It is true the evidence does not prove whether the salary of plaintiff was paid during his disability. If it was it was gratuitous and the cases cited will be applicable. If his wages were not in fact paid during that time, much more would he be damaged.

Bitter complaint is made about alleged prejudicial conduct of plaintiff's attorney. Mr. Goles, a police officer of the Accident Prevention division, was called

as a witness by defendants. On cross-examination he was asked by plaintiff if he ever received any gifts from the Yellow Cab Company. He denied he had ever received such gifts. Defendants moved for a mistrial. The motion was denied. It is urged this was error. *Keehn v. Braubach,* 307 Ill. App. 339, is cited. Officer Goles had been an attending witness for three days. He said he received his subpoena fee and it was all he expected to get. He was in an official position where he would often come into contact with the cab companies. Plaintiff (a brother officer) for five years received a Christmas present of $5 from the defendant corporation. His affidavit produced in opposition to the motion for a new trial shows that he had been informed other officers received similar gifts. We think his attorney in good faith and in loyalty to his client might well inquire whether the witness had been neglected in this general ministration.

Much complaint is made about the cross-examination of defendant Hughes. It covers fourteen printed pages of the abstract. Defendants cite *Spohr v. City of Chicago,* 206 Ill. 441, and *Zetsche v. Chicago, Peoria & St. Louis Ry. Co.,* 238 Ill. 240, and say the effect of repeating questions already answered had a tendency to confuse the jury and to make appear (contrary to fact) evidence given by defendant Hughes by deposition prior to the trial was inconsistent with his testimony at the trial. Defendants underestimate the intelligence of Cook county juries. Experience will disclose an unfair cross-examination to be a sure way of prejudicing the cause of client. Moreover, the trial judge was there and could manifest his disapprobation by sustaining objections or granting a new trial. Hughes was the most important occurrence witness in the case. He saw it and was a part of it. There is nothing in his cross-examination calling for reversal.

Defendants contend the trial court gave too many instructions for plaintiff. We agree. They cite *Chicago, Paducah & Memphis R. Co. v. Mitchell,* 159 Ill.

406; *Kravitz v. Chicago City Ry. Co.*, 174 Ill. App. 182, and *Komorowski v. Boston Store of Chicago*, 263 Ill. App. 88. The trial court gave at the request of plaintiff, twenty-four instructions and at the request of defendants, eighteen instructions. The point is made first on appeal and defendants are hardly in a position to complain.

Defendants complain the court refused a request to give the usual instruction that the testimony of an unimpeached witness for defendant ought not to be disregarded because he is an employee. They say this instruction was vital because Hughes was an employee of the cab company. They failed to notice that he was also a codefendant and therefore much interested in the case. The court did not err in this.

It is complained that an instruction was given informing the jury of the Illinois statute providing in substance that no person should wilfully fail or refuse to comply with the order or direction of a police officer who has authority to control or direct traffic, and that a driver should not disobey the instruction of any traffic control device unless directed by a police officer. Defendants say there is no evidence to which this instruction was applicable; that plaintiff did not give any signal, etc. *People v. Reno*, 324 Ill. 484, is cited. There was evidence that just before the accident plaintiff held out his hand to stop traffic and that he was in the act of raising his whistle to his mouth to give north and south traffic the signal to proceed at the time he was struck. Southbound traffic had no right to proceed over the crosswalk until the officer should so indicate. The instruction was not erroneous.

Another complaint is made of an instruction telling the jury that if defendants' conduct was wilful and wanton as charged, contributory negligence of plaintiff would not bar this suit. It is said the instruction was erroneous in that it did not add "unless they found plaintiff was also guilty of wilful and wanton con-

duct." Defendants cite *Pardridge v. Cutler,* 168 Ill. 504, 512; *Home Bank & Trust Co. v. Szostowski,* 247 Ill. App. 207. The instruction is, we hold, not peremptory. *Murphy v. Illinois State Trust Co.,* 375 Ill. 310.

Complaint is made that the court gave the usual instruction about the number of credible witnesses being a proper element to consider in determining preponderance of the evidence. Defendants say it should not have been given because it stressed a single element without mentioning other elements entitled to equal consideration. *Skamenca v. Reeser,* 294 Ill. App. 216. This case is different from the *Skamenca* case, where only one instruction was given directed to the determination of the preponderance of the evidence. There was no error in giving the instruction.

Complaint is made of an instruction directing attention to the statute which requires a motor vehicle operating on a highway to be equipped with a horn, etc., and that when reasonably necessary warning with a horn should be given. The instruction stated the law in the language of the statute and was applicable to the facts. It was not erroneous. *Deming v. City of Chicago,* 321 Ill. 341; *Reisch v. People, for use of Stringer,* 229 Ill. 574; *Eaton v. Marion County Coal Co.,* 173 Ill. App. 444, 450.

Defendants complain much that the court at the request of plaintiff gave to the jury an instruction which recited almost verbatim the complaint, then told the jury that if it believed defendants were guilty of one or more of the particular acts of negligence as alleged in the first count, etc., they should find defendants guilty. The same instruction went on to say that the second count differed from the first only in not alleging plaintiff was in the exercise of ordinary care. It also alleged the acts complained of in the first count were committed by defendants in a wilful and wanton manner, etc., and that if they believed these facts had been proved under the second count, they should find

defendants guilty. We hold the instruction ought not to have been given. *Reivitz v. Chicago Rapid Transit Co.*, 327 Ill. 207, 212; *Attabella v. Krzepton*, 233 Ill. App. 320; *Smoot v. Hollingsworth*, 265 Ill. App. 447. The Supreme Court in many cases has held it is error to give the complaint to the jury. *Johnson v. Pendergast*, 308 Ill. 255; *Lerette v. Director General of Railroads*, 306 Ill. 348; *Bernier v. Illinois Cent. R. Co.*, 296 Ill. 464. Other decisions criticize the practice of referring to the complaint in an instruction unless the jury are instructed as to what issues are raised by the complaint. *Bernier v. Illinois Cent. R. Co.*, 296 Ill. 464; *Tregoning v. Tregoning*, 262 Ill. App. 489; *Williams v. Stearns*, 256 Ill. App. 425. Other cases hold that it is the duty of the trial court to instruct the jury as to the issues. Some seem to approve the practice of defining the issues to the jury in the language of the declaration. *Central Ry. Co. v. Bannister*, 195 Ill. 48; *West Chicago St. R. Co. v. Lieserowitz*, 197 Ill. 607, 610. In yet another case the Supreme Court seems to have held it was error for the trial court to refuse instructions requested by a defendant which defined the issues raised in each count of the declaration and in each instruction told the jury that unless the allegations were proved no recovery could be had. In *Krieger v. Aurora E. & C. R. Co.*, 242 Ill. 544, 548, the Supreme Court said:

"The rule adopted by nearly all courts is, that the court must define the issues to the jury without referring them to the pleadings to ascertain what they are."

*McFarlane v. Chicago City Ry. Co.*, 288 Ill. 476, 485, is to the same effect. The plaintiff cites *Liska v. Chicago Rys. Co.*, 318 Ill. 570, and says of it: "In an exhaustive opinion written by Mr. Justice De Young, the giving of instructions of this character is upheld." After reading the opinion, we think the statement not justified.

In *Illinois Cent. R. Co. v. King,* 179 Ill. 91, the Su-. preme Court approved the practice as stated by two well-known authorities; Thompson on Trials, §§ 1027, 2314 and 2582, and 11 Encyclopedia of Pleading and Practice (154). The Supreme Court said:

"In Thompson on Trials the learned author, in defining the province of the court and jury, says (sec. 1027): 'The construction of the pleadings is, of course, always a question for the court. . . . It is, therefore, the duty of the court to state the issues to the jury, without referring them to the pleadings to ascertain what the issues are. . . . It is error to leave the jury to construe and determine the effect of the pleadings.' . . . In 11 Encyclopedia of Pleading and Practice (154) it is said: 'The clear weight of authority is, that it is the province and duty of the court to state specifically to the jury what issues are raised by the pleadings, and that it is erroneous to refer to the pleadings to ascertain what the issues were; that the construction of the pleadings and the issues raised thereby are questions for the court alone, and not for the jury.' "

While instructions of the kind here in question are contrary to the law as thus stated, in so far as the briefs inform us the courts of this State have not thus far reversed a judgment for this cause. We think the jury here was not misled. The facts were simple, the issues easily understood. We do disapprove instructions of this character.

The judgment will be affirmed.

*Judgment affirmed.*

O'CONNOR, P. J., and McSURELY, J., concur.