Gaspare Signa, Appellee, v. Arthur Alluri et al., Defendants Below.
On Appeal of Albert Alluri, Appellant.

Gen. No. 45,818.

Opinion filed May 12, 1953. Rehearing denied May 26, 1953. Released for publication August 4, 1953.

PRETZEL & STOUFFER, of Chicago, for appellant; CHARLES D. SNEWIND, of Chicago, of counsel.

JOSEPH D. RYAN, and ARTHUR RYAN, both of Chicago, for appellee.

MR. JUSTICE TUOHY delivered the opinion of the court.

Gaspare Signa sued Arthur Alluri, Albert Alluri, Helen Andrews and Edward Andrews for damages on account of injuries sustained in an intersection automobile accident which occurred May 19, 1948 in Melrose Park, Illinois. Plaintiff was a passenger in the car owned by the defendant Arthur Alluri and driven by his son, defendant Albert Alluri, west on Cortland street, which collided with the car being driven south on 75th avenue by defendant Edward Andrews allegedly as the agent of defendant Helen Andrews. Helen Andrews and Edward Andrews were charged with negligence, Arthur and Albert Alluri were charged with willful and wanton conduct. At the close of plaintiff's case the court directed a verdict in favor of defendant Helen Andrews, and at the close of all the evidence submitted the case to the jury as to the other defendants. The jury returned a verdict of not guilty as to defendants Arthur Alluri and Edward Andrews, and found defendant Albert Alluri guilty, assessing plaintiff's damages at the sum of $17,500.

13

Judgment was entered on the verdict, and motion of defendant for judgment notwithstanding verdict and the alternate motion for new trial were overruled. Appeal is taken from this judgment.

Defendant argues that the evidence fails to establish willful and wanton conduct.

Viewed most favorably from plaintiff's standpoint, the evidence tends to establish the following facts: Plaintiff was employed by defendant Arthur Alluri on a construction job in Elmwood Park. He had been picked up at his home by defendant Albert Alluri and was being driven to the job at the time the accident happened. The morning was bright and sunny. Cortland street runs east and west and intersects 75th avenue, a north and south street, at right angles. Each street is approximately 26 feet wide at the point where the intersection begins, and both are paved. Neither street was a stop street. On the north side of Cortland street and at the east side of 75th avenue were 13-foot parkways and 5-foot sidewalks, and immediately east and north of the sidewalks an azalea hedge extended north and east from the corner for about 100 feet. Defendant Alluri testified that he did not look north into 75th avenue as he approached the intersection. Neither did he sound a horn. There was evidence from which it can be concluded that Alluri could have seen the Andrews car for a distance of 75 feet as he approached the intersection in question, had he looked north. There was testimony that his car approached and entered the intersection at 40 to 45 miles an hour. Defendant Alluri's car struck defendant Andrews' car at the driver's door when the Andrews car was about five feet from the south curb of Cortland street, and the Andrews car rolled over several times.

 Defendant Albert Alluri urges that such facts tend to establish at most simple negligence on his part. Inasmuch as plaintiff was a gratuitous passenger in

14

Alluri's car, it was necessary for him to prove willful and wanton misconduct by Albert Alluri in order to recover against Alluri.

The myriad of cases in which the courts of this State have defined willful and wanton conduct afford no simple formula by which its existence in a given case may be ascertained. Defendant argues that the distinction between willful and wanton conduct and negligence is a substantial one to be ascertained by the application of well measured legal standards. While substantial differences of liability follow the determination of whether negligence or willful and wanton conduct exists in a given case, the determination of the ultimate question itself seems to be marked by a difference of degree rather than of substance. Our courts have defined the doctrine in such general terms as to make it a practical impossibility to apply standards which distinctly trace the line of cleavage between the two, and what has been held to bring one case within the elastic definitions of willful and wanton conduct is of little or no assistance in determining its application to another. In its most general definition willful and wanton conduct has been said to be conduct exhibiting a reckless disregard for the safety of others or a conscious indifference to consequences. *Bartolucci v. Falleti,* 382 Ill. 168, 174; *Schneiderman v. Interstate Tr. Lines,* 394 Ill. 569, 583; *Mower v. Williams,* 402 Ill. 486, 490. In *Provenzano v. Illinois Cent. R. Co.,* 357 Ill. 192, the Supreme Court said (p. 195):

"In order to constitute willful and wanton misconduct the injury must either have been intentionally inflicted, or produced by acts so grossly negligent as to exhibit a reckless disregard for the safety of others."

In *Lake Shore & M. S. Ry. Co. v. Bodemer,* 139 Ill. 596, it was held to be equivalent to gross negligence, the court saying (pp. 606–607):

15

"What is meant by 'such gross negligence as evidences wilfulness?' It is 'such a gross want of care and regard for the rights of others as to justify the presumption of wilfulness or wantonness.' . . . 'When it is said, in cases where plaintiff has been guilty of contributory negligence, that the company is liable, if by the exercise of ordinary care it could have prevented the accident, it is to be understood that it will be so liable if, by the exercise of reasonable care, after a discovery by defendant of the danger in which the injured party stood, the accident could have been prevented, or if the company failed to discover the danger through the recklessness or carelessness of its employees, when the exercise of ordinary care would have discovered the danger and averted the calamity.' "

Defendant cites several cases to the effect that the mere fact that a vehicle is driven at a speed prohibited by law will not furnish a sufficient reason for holding that an injury was willful or wanton. *Ruwisch v. Knoebel,* 233 Ill. App. 526, 529; *Blanchard v. Lake Shore & M. S. Ry. Co.,* 126 Ill. 416, 424; *Illinois Cent. R. Co. v. Hetherington,* 83 Ill. 510, 516; *Illinois Cent. R. Co. v. O'Connor,* 189 Ill. 559, 566. On the other hand, in the case of *Streeter v. Humrichouse,* 357 Ill. 234, 240, the court said:

"We cannot agree that evidence of speed, alone, is insufficient to warrant submitting that question to the jury. In *Balsewicz v. Chicago, Burlington and Quincy Railroad Co.,* 240 Ill. 238, at page 249, we held that it was proper to refuse an instruction which informed the jury that willfulness or wantonness in the infliction of an injury could not be charged to a railroad company merely because of its failure to comply with a speed ordinance, and that a failure to comply with a speed ordinance may or may not establish willfulness or wantonness, according to the rate of speed and the circumstances shown by the testimony."

16

■ It would appear that the true rule in this State is that speed is a circumstance which may be taken into consideration bearing upon the presence of willful and wanton conduct, and in a given case might of itself establish willful and wanton conduct, taking into consideration the degree of speed with reference to all other surrounding facts and circumstances.

■ While the question in the instant case, as to whether there is any evidence in the record that defendant Albert Alluri was guilty of willful and wanton conduct proximately causing the accident and injury, is very close, the evidence of the failure of defendant to look to the north prior to the accident, coupled with the speed with which he drove into the intersection, in our opinion raised a question of fact for the jury.

Complaint is made of a number of instructions tendered in behalf of plaintiff and given by the court, and several others tendered by codefendants and given by the court. We have carefully examined the objections to all these instructions and shall confine our comments here to the giving of plaintiff's instruction 13.

This is the highly controversial instruction often commented upon by our courts, which purports to summarize the allegations of the complaint. In order that the result at which we have arrived on this instruction may clearly appear, we consider it advisable to review the various decisions, some conflicting, which have marked the development of our legal theory with reference to instructions acquainting the jury with the issues in an action based on negligence.

■■ It has long been the rule in this State that recovery can be had only on the negligence charged in the complaint. *Herring v. Chicago & A. R. R. Co.*, 299 Ill. 214, 217; *Both v. Collins*, 339 Ill. App. 437, 440. So, too, it has been held error to instruct the jury with reference to negligence "alleged in the complaint" in

17

the absence of other or further instruction pointing out the negligence charged. *Laughlin v. Hopkinson,* 292 Ill. 80; *Krieger v. Aurora, E. & C. R. Co.,* 242 Ill. 544; *Schlauder v. Chicago & Southern Traction Co.,* 253 Ill. 154; *Bernier v. Illinois Cent. R. Co.,* 296 Ill. 464; *Lerette v. Director General,* 306 Ill. 348. These cases clearly disapprove of the practice of referring to the complaint in an instruction, in the absence of clarification as to what factual matters are charged in the complaint, notwithstanding statements to the contrary in a few earlier cases. (*Ohio & M. Ry. Co. v. Porter,* 92 Ill. 437; *West Chicago St. R. Co. v. Lieserowitz,* 197 Ill. 607, 610, and *James S. Kirk & Co. v. Jajko,* 224 Ill. 338, 342.)

■ The question then presents itself, how should the jury be made acquainted with the allegations of the complaint or the issues raised by the pleadings? While in several early cases the practice of sending the declaration to the jury room was approved (*West Chicago St. R. Co. v. Buckley,* 200 Ill. 260, 265; *City of East Dubuque v. Burhyte,* 173 Ill. 553, 556), the later cases, which now may be considered to state the law of this State, have held it error to send pleadings to the jury room. *Lerette v. Director General,* 306 Ill. 348, 355; *Bernier v. Illinois Cent. R. Co.,* 296 Ill. 464, 473; *Cipperly v. Carmack,* 258 Ill. App. 593, 600. The practice was also condemned in *Elgin, A. & S. Traction Co. v. Wilson,* 217 Ill. 47, 56, and *Elie v. Adams Express Co.,* 300 Ill. 340, 345. These cases condemning the practice of sending pleadings to a jury room are sanctioned by sound reason. No reasonable justification appears for permitting a lay jury to speculate over the meaning of charges set forth in a pleading often phrased in the stilted language of another age, perplexing in some instances even to the trained professional mind. Furthermore, the determination of issues raised by

18

pleadings involves in the final analysis a judicial determination.

Later the practice arose of embodying the allegations of the complaint in an instruction, and thus by indirection bringing to the attention of the jury what was directly prohibited. Obviously the evil is the same whether the complaint itself or an instruction embodying all the allegations of the complaint reaches the jury. It is the content of the complaint that is objectionable, and not the title by which it is designated. The practice of embodying pleadings in an instruction has been criticized in a number of cases, including *Reivitz v. Chicago Rapid Transit Co.*, 327 Ill. 207, 212; *Goldberg v. Capitol Freight Lines*, 382 Ill. 283, 292; *Cooney v. Hughes*, 310 Ill. App. 371; *Smoot v. Hollingsworth*, 265 Ill. App. 447, 454; *Bales v. Pennsylvania R. Co.*, 347 Ill. App. 466. Inasmuch as it appears from these decisions that the negligence to be proved in a given case must be that alleged in the complaint and that the jury has no right to speculate as to any other negligence, and inasmuch as it further appears that the negligence alleged in the complaint may not be determined by the jury from an inspection of the pleadings themselves nor from an instruction embodying *in toto* the allegations of such pleadings, the question arises as to how the jury may be made acquainted with the issues. The safe and proper rule, as set forth in a long line of cases, among them *Krieger v. Aurora E. & C. R. Co.*, 242 Ill. 544, 548; *McFarlane v. Chicago City Ry. Co.*, 288 Ill. 476, 485; *Laughlin v. Hopkinson*, 292 Ill. 80, 85; *Bernier v. Illinois Cent. R. Co.*, 296 Ill. 464, 472; *Reivitz v. Chicago Rapid Transit Co.*, 327 Ill. 207, 212; *Rink v. St. Louis Southwestern Railway Co.*, 151 Ill. App. 429, 433; *Attabella v. Krzepton*, 233 Ill. App. 320, 329; *Cooney v. Hughes*, 310 Ill. App. 371, 381; *Fraider v. Hannah*, 338 Ill. App. 440, 452; *Bales v. Pennsylvania R. Co.*, 347 Ill.

19

App. 466, is for the court to inform the jury in a clear and concise manner of the issues raised by the pleadings. This should be accomplished by a *summary* of the pleadings, succinctly stated without repetition and without undue emphasis.

Judged by these principles we are of the opinion that instruction 13 in the instant case was prejudicially erroneous.

In the first place it was unduly prolix. It contained almost 800 words or about three printed pages of abstract, exclusive of the concluding portions, directory in the event the jury found defendants guilty of the acts charged in the complaint. In view of the extreme length of the instruction it would unduly prolong this opinion to set it forth *in haec verba*. The allegations charging willful and wanton misconduct, alone, as distinguished from those additional ones charging simple negligence, consist of more than 500 words, requiring about two pages of abstract to contain them. These charges of negligence and willful and wanton misconduct are identical, almost to the last detail, with the allegations in the complaint; and if it be held erroneous to send the complaint to the jury room, *a fortiori* it was error to announce to the jury its counterpart.

A more serious objection than mere length is that the instruction tends to emphasize plaintiff's charges of liability by placing in the court's mouth substantially the entire charge of the complaint. The frequent repetition of such allegations tends to endow them with unilateral significance. In the instant case the paragraphs of the 800-word instruction time after time repeat the statement "[defendant] with a conscious indifference . . . wilfully and wantonly failed" etc. While it is true that elsewhere it was recited that the allegations of the complaint were merely unsworn statements neither proving nor tending to prove any

20

allegations contained therein, we are of the opinion that such explanation does not cure the inherent evil in the instruction. To hear a judge, the one man in the courtroom whose remarks are most respected and most dutifully attended, solemnly repeat with all the influence of his favored position, minute after minute and sentence after sentence, detailed charges of negligence carefully drawn by partisan attorneys to present one side of the case in its most appealing aspects, must tend to unduly influence a jury toward the side whose charges are so persistently and so effectively presented through such a powerful medium. It is hardly an answer to say that the defendant has the same opportunity to tender by way of an instruction the defense set forth. It is a rather unequal and disproportionate allotment which of necessity compels a defendant, in reply to long, grandiloquent and minutely detailed charges, to say merely that the defendant denies each and every allegation of the complaint. Moreover, on a charge of such repetitious length, even a most intelligent juror might well be confused to the point of uncertainty as to whether he was hearing the recital of accusations or a summary of evidence.

 We are aware that we have not heretofore reversed for the giving of an instruction similar to this, but we have warned that in a close case on the facts we would not hesitate so to do. *Smoot v. Hollingsworth*, 265 Ill. App. 447. We consider this such a case. We recognize the temptation to attorneys, intent upon the successful outcome of litigation in which they are engaged, to disregard warnings long unenforced, and to interpret them as counsels of perfection rather than mandatory direction; but to persist in tendering questionable instructions is a practice upon which counsel elect to proceed at the peril of reversal.

We find no reversible error in other instructions or rulings on evidence.

21

For the giving of the erroneous and prejudicial instruction indicated the judgment is reversed and the cause remanded.

*Judgment reversed and cause remanded.*

ROBSON, P. J. and SCHWARTZ, J., concur.