Albin Kuzminski, by John Kuzminski, His Next Friend, Appellee, v. E. J. Waser and J. Obermeier, Trading as Waser Auto Radiator Company, Appellants.

Gen. No. 41,587.

Heard in the second division of this court for the first district at the December term, 1940. Opinion filed May 14, 1942.

DELMAR J. HILL and CYRUS L. GARNETT, both of Chicago, for appellants.

HENRY MITGANG, of Chicago, for appellee; ARTHUR A. WOLFINSOHN, of Chicago, of counsel.

MR. PRESIDING JUSTICE SCANLAN delivered the opinion of the court.

An action for damages for personal injuries sustained by plaintiff. A jury returned a verdict finding defendants guilty and assessing plaintiff's damages at $5,000. Judgment was entered upon the verdict. Defendants' motion for a new trial, made nine days after the entry of the judgment, was overruled. Defendants prosecuted an appeal to the Supreme Court (*Kuzminski v. Waser*, 374 Ill. 428) "on the ground, as it is claimed, that although the appellants had the form they did not have the essence of due process of law or a constitutional jury trial." The contention was based upon proof which was received on the motion for a new trial that Sonia Young, before she was accepted as a juror, had testified falsely on the *voir dire* examination to the effect that neither she nor any member of her family had been interested in a personal injury suit arising out of an automobile accident, whereas her husband had been the plaintiff in such a suit shortly before the instant trial. The Supreme

Court held that it had no jurisdiction of the cause for the reason that "the most that is claimed for the appellants amounts to an argument that a new trial should be granted because of the assumed bias of this juror," and transferred the cause to this court.

Defendants state that they rely upon the following alleged errors for a reversal of the judgment: "1. The trial court erred, and violated defendants' constitutional guarantees of an impartial jury trial and due process of law, in not granting a new trial when it appeared, after trial, that one of the jurors, unknown to defendants, had given materially false answers on her *voir dire*. 2. The trial court erred in giving certain instructions to the jury at plaintiff's request. 3. The trial court erred in refusing to give a proper instruction tendered by defendants." Although defendants' argument as to point 1 is based upon the assumption that the false statement made by the juror upon her *voir dire* "in and of itself disqualified her" and that "she therefore did not possess the statutory qualifications of a juror," and "in that respect too the jury was not a constitutional jury," nevertheless, we will assume that point 1 is broad enough to support a contention that the defendants were prejudiced by the false answers of the juror.

In *Maher v. New York, C. & St. L. R. Co.*, 290 Ill. App. 267, the foreman of the jury had made misstatements and had not truly and fully answered questions put to him on his *voir dire* examination, "in that he was asked by counsel for defendant whether he or any member of his family had ever been involved in a personal injury case or whether he had ever been sued in a personal injury case, which questions were answered in the negative; that thereupon the prospective juror was examined by counsel for plaintiff who asked, 'Have you ever had any experience that might prejudice you against . . . the plaintiff?' and 'Nobody ever sued you for damages?' and the answers were,

'No, sir.' " (p. 269.) Neither the defendant in that suit nor its attorney learned of the falsity of the answers until after the trial. In the opinion of this court, written by Mr. Justice O'CONNOR, appears the following (pp. 275, 276, 277):

"In the instant case, as in all cases, 'the rule of reason' must constantly be kept in mind. Judgments are not reversed for every error that appears in the record. If this were so, few if any, would be permitted to stand. But we think the true test in the case at bar is not whether the prospective juror answered truthfully and fully the questions put to him, but, Has the petitioner been prejudiced in the case? *Swan v. Boston Store,* 191 Ill. App. 84; *Pienta v. Chicago City Ry. Co.,* 208 Ill. App. 309; *Edwall v. Chicago, R. I. & P. Ry. Co.,* 208 Ill. App. 489; *Raub v. Carpenter,* 187 U. S. 159; *United States v. Rosenstein,* 34 F. (2d) 630; *O'Brien v. Gen. Accident Corp.,* 42 F. (2d) 48; *James v. State,* 68 Ark. 464; *State v. Cleary,* 40 Kan. 287; *State v. Brown,* 114 Kan. 452; *Schmidt v. Rose,* 6 Mo. App. 579; *Hays v. Thompson,* 15 Abbotte Pr. New Series, 220; *Burden v. Stevens,* 174 Okla. 312; *Suggs v. State,* 46 Okla. Crim. 340; *Sansouver v. Glenlyon Dye Works,* 28 R. I. 539; *Leeper v. State,* 29 Tex. Crim. App. 63; *Goad v. State,* 106 Tenn. 175; *Beck v. Thompson,* 31 W. Va. 459.

"In the *Swan* case (191 Ill. App. 84) it was held that it was not reversible error for the trial judge to overrule the motion for a new trial because a juror had made incorrect and misleading answers on his *voir dire* examination, since it did not appear that the juror was prejudiced or biased against the defendant.

"In the *Pienta* case (208 Ill. App. 309), a suit to recover for personal injuries, a prospective juror was asked whether he or any of his relatives had ever been in a street car accident, and whether he or they had ever been interested 'in a case of that kind.' He replied in the negative. It afterward appeared that

his wife had met with an accident on a sidewalk and had settled a claim therefor with the city, and it was held that the reply was not untrue, and the judgment was affirmed.

"In the *Edwall* case (208 Ill. App. 489) suit was brought to recover damages for personal injuries. The court there said (p. 503): 'A brother-in-law of one of the firm of defendant's attorneys (not the one that tried the case) was accepted on the jury without the plaintiff's knowledge of that relation. Affidavits are filed here tending to show that the juror evaded questions put to him on his *voir dire* that ought to have developed that fact. . . . We do not regard this reversible error.'

"In *Raub v. Carpenter* (187 U. S. 159), a motion was made to vacate a decree, one of the grounds being that one of the jurors was disqualified for service because he was under the age of 21 years and had several times been convicted of the crime of petit larceny, and it was charged that the juror had falsely answered questions put to him on his *voir dire* touching these two questions. The motion was overruled and the Supreme Court of the United States held that the matter was within the discretion of the trial court. The court there refers to *Wassum v. Feeney,* 121 Mass. 93, where that court referred with approval to *Hill v. Yates,* 12 East 229, where it was said, 'where the son of a juryman unlawfully served in his father's place, and pointed out that Lord Ellenborough there "said that he had mentioned the case to all the judges, and they were all of opinion that it was a matter within their discretion to grant or refuse a new trial on such a ground; that if no injustice had been done, they would not interfere in this mode."'

"In *State v. Cleary,* 40 Kan. 287, the court said (p. 295): 'It has been decided in very many reported cases that the most important consideration in questions about the impartiality of jurors, is whether an

unjust verdict has resulted from the presence of obnoxious jurors upon the panel; if not, it would be idle to grant a new trial, which would probably be productive only of the same result.'

"And in *Suggs v. State,* 46 Okla. Crim. 340, 285 Pac. 985, the court said (p. 986): 'As a general rule a verdict will not be set aside for reasons that would be sufficient to disqualify a juror on a challenge for cause which existed before the juror was sworn, but which was unknown to accused until after the verdict, unless it appears from the whole case that the accused suffered injustice from the fact that the juror served in the case.' To the same effect are the other cases above cited, but we think it would serve no useful purpose to discuss them.

"Since it is held in the cases above cited that it is not error for the court to overrule a motion for a new trial where a prospective juror has answered falsely or has not sufficiently disclosed the facts, unless prejudice is shown, with greater reason, we think, should the court deny a new trial where the motion, under section 72 of the Practice Act, is not made until after judgment has been entered, and where, as in the instant case, the judgment has been affirmed on appeal to this court, and leave to appeal has been denied by the Supreme Court." Leave to appeal in that case was denied (see 291 Ill. App. xxxii).

In *People v. Beacham,* 358 Ill. 373, the defendant was tried and convicted for procuring an explosive compound with intent to use it for the unlawful injury or destruction of life or property. The defendant was arrested as he came out of an alley in the rear of the C. I. P. S. building, in Springfield, and at the time he was carrying a fused bomb made from a syrup can. The Peabody Coal Company owned and operated coal mines in the Springfield territory and had an office in the C. I. P. S. building. "All of the miners employed by the company were members of the United Mine

Workers of America. A rival organization, the Progressive Miners, wanted to place its members upon the pay-roll of the company. A struggle ensued which has led to violence and bombing." (p. 374.) Upon the motion for a new trial the defendant claimed that one of the jurors was disqualified because he had made false statements, on his *voir dire,* to the effect that he was not employed at a Peabody mine, when in fact, as it afterwards developed, the juror was employed at a Peabody mine. The trial court after considering the affidavits of counsel for defendant and the juror, *"as well as the further examination of the juror in open court,"* held that the point was without merit. The Supreme Court, in passing upon the question, held that the fact that the juror was employed at the Peabody mine did not disqualify him as a juror and that such fact would have been at most a reason for a peremptory challenge by the defendant. The Supreme Court concluded (p. 377): "After a careful review of the evidence and affidavits presented to the trial court in this regard, we cannot say that the denial of the motion for new trial constituted prejudicial error in this case."

Defendants cite the following Illinois cases in support of their contention: *Coughlin v. People,* 144 Ill. 140; *Guykowski v. People,* 2 Ill. 476; *People v. De Lordo,* 350 Ill. 148; *Donovan v. People,* 139 Ill. 412, and *Lavin v. People,* 69 Ill. 303, but none of these cases has a bearing upon the question before us, *viz.,* Were defendants prejudiced by the false answers of the juror?

An able, experienced and conscientious judge presided in the trial of the instant cause. Upon the motion for a new trial he not only heard affidavits introduced by defendants in support of their claim as to the juror, Young, but at the instance of defendants heard evidence bearing upon the claim. The juror, Young, was examined by court and counsel. At the

conclusion of the hearing the trial judge delivered the following opinion:

". . . The principal ground for new trial urged by the defendant is that a juror (Mrs. Young) made an incorrect answer on her *voir dire* examination. The jurors were examined in panels of four, and the following questions were asked by defendant's counsel of the entire panel of four of which the juror in question was one:

"'Let me ask you this question now again'—directed to you four on this panel—'Has anybody been hurt in any sort of an accident, any one of you jurors? Has any of you had any member of your family hurt in any accident, or had any close friend hurt wherein you were concerned with the prosecution of a claim or suit for it?'

"Mrs. Young remained silent.

"It appears that Mrs. Young's husband, on about May 15, 1936, was struck by a city truck, brought suit and obtained an agreed judgment against the City for $500 in June, 1939. Counsel for defendant first produced Mr. Victor E. Karlsen, attorney for Mr. Young in his suit against the City, who testified to the settlement of that case. He testified also that he knew Mrs. Young. He further testified as follows:

"'Q. As far as you know, she didn't have any axes to grind with anybody, did she? A. No.

"'Mr. Mitgang [attorney for plaintiff]: That is all.

"'The Court: As far as you know, she was never a party to a suit?

"'The Witness: No, sir, she didn't know anybody in it and she—as far as I know—I believe she could render a fair and impartial verdict without any reservations on the other trial at all. She passed no comment on the other case at all.'

"Following this testimony I requested Mr. Karlsen to produce Mrs. Young, which he did, and her testi-

mony was taken on December 29, 1939. When she appeared she was quite agitated and wept considerably. Notwithstanding this her answers, it seemed to me, were direct and honest. Her only explanation of her failure to reveal her husband's accident was, 'It just went out of my mind.' When her attention was called to the specific questions read to her from the record, she said she remembered the questions, and when asked why she did not answer she said, 'I just didn't, that is all.' This answer in the cold record may appear to have been said defiantly, but that does not reveal the true demeanor of the witness, which was rather that of a deeply perplexed and disturbed woman. When cross-examined by counsel, she said: 'Q. Yes, when you were questioned whether, as to whether there were any previous accidents, didn't it occur to you that your husband had been in this accident? A. No, not just then. Maybe because I wanted to get on the jury, I don't know.'

"Having had occasion in recent months to observe women jurors I can understand the full import of her answers. To women the opportunity to serve on a jury is not only a duty to be performed conscientiously, but also an exciting adventure. Most of them are eager to get to actual deliberation and decision of a case. To them it has not yet become a boresome and burdensome function to be performed by the other fellow. I have also observed that it often takes a little courage for a juror to speak up when addressed by counsel. There was little excuse for Mrs. Young's not revealing the fact of her husband's accident, but I am convinced from her demeanor on the witness stand and from the candor and honesty of her answers, in spite of her perturbation, that she was a conscientious and unprejudiced juror.

"In coming to the conclusion to overrule the motion for a new trial on this point, I have followed the wise and practical rule laid down by the Appellate Court

in *Maher v. New York, Chicago and St. Louis Railroad Company,* 290 Ill. [App.] 267, page 275, where it is said: (Here follows an excerpt from the opinion in that case.)

"Two other points were made by the defendant, one relating to the instruction in which it is said that the number of witnesses is a factor to be considered in determining the weight of the evidence. While the instruction is admittedly correct, counsel for defendant argued that this point was overemphasized. I do not think so. The other point made by the defendant is that the verdict is excessive. On the theory of the defendant's case that is quite true, but on the theory of the plaintiff's case, which there is ample evidence to support, the verdict is not excessive.

"The motion for new trial is overruled."

The juror, Young, was examined as to happenings during the deliberations of the jury. Questioned by the court, she testified that all of the jurors voted guilty upon the first ballot but that considerable time was taken up in reaching a verdict as to the amount of the damages. Some thought $15,000 should be awarded; some, $10,000; some, $5,000. She thought that $5,000 was the proper amount and so voted. She further testified that the fact that her husband had been injured did not affect her verdict in the instant case. It appeared at the hearing that the case of the juror's husband was settled by an agreement between the parties, and an agreed judgment for $500 was entered. It must be noted that defendants do not contend here that the verdict was the result of passion and prejudice, nor that the verdict is manifestly against the weight of the evidence, nor that the damages awarded are excessive. Indeed, they concede in their brief that if the jury believed plaintiff's witnesses the verdict was justified. The trial court, in an earnest effort to ascertain all of the facts and circumstances bearing upon the major contention of defendants,

interrogated the juror as to how the jury stood upon the question of the guilt or innocence of defendants, and she testified that when they first went into the jury room all of the jurors voted guilty. Defendants had abundant time and opportunity to contradict this testimony, but they failed to do so. The trial court, in his opinion, states: "I am convinced from her demeanor on the witness stand and from the candor and honesty of her answers, in spite of her perturbation, that she was a conscientious and unprejudiced juror." He saw and studied the woman during the hearing and had a better opportunity than we have to pass upon the instant question. We are satisfied that we could not justly disturb the trial court's finding. In *Raub v. Carpenter*, 187 U. S. 159, *supra*, cited in *Maher v. New York, C. & St. L. R. Co.*, 290 Ill. App. 267, *supra*, the Supreme Court of the United States held that the matter was within the discretion of the trial court. Our Supreme Court, in *People v. Beacham*, 358 Ill. 373, *supra*, also placed reliance upon the judgment of the trial court. If juror Young had stated upon her *voir dire* that her husband had had a case against the City of Chicago which was settled by agreement that fact would not even tend to disqualify her as a juror, and all judges who have had experience in the trial of personal injury cases know that it is not uncommon for the defendants in such cases to accept veniremen whose relatives had been plaintiffs in personal injury cases, especially where the case was settled. Defendants did not see fit to file a motion for a new trial until nine days after the entry of judgment. It is clear that the trial court approved the verdict of the jury. The instant case was well tried and the absence of errors in the record that are usually assigned in cases of this character has forced counsel for defendants to place undue importance upon the conduct of juror Young.

From the opinion of the trial judge it appears that upon the motion for a new trial only three points were made: (1) as to the juror, Young; (2) as to an instruction that the number of witnesses is a factor to be considered in determining the weight of the evidence, and (3) that the amount of the verdict is excessive. Point (3) has been abandoned by defendants. Defendants now complain that the trial court erred in giving plaintiff's instruction two to the jury. Upon the motion for a new trial defendants made no point as to this instruction. The instruction is not subject to the criticism now made, that it assumed that plaintiff was on the street where he could be seen as the truck approached.

Defendants next contend that the court erred in giving plaintiff's instruction five, which reads as follows: "The plaintiff is not bound to prove his case beyond a reasonable doubt, but is only required to prove it by a preponderance of the evidence." Upon the motion for a new trial defendants made no complaint as to this instruction, and as they are not contending here that the verdict is against the manifest weight of the evidence we are unable to see why they now complain of the instruction. It has been repeatedly held that the instruction is a proper one. See *Pierson v. Lyon & Healy*, 243 Ill. 370, 378, and cases therein cited. See, also, *Peterson v. Chicago & Oak Park Elevated R. Co.*, 176 Ill. App. 218, 229, and cases therein cited; *Jones v. Esenberg*, 299 Ill. App. 551, 556; and *Murphy v. Brichler*, 305 Ill. App. 6, 13.

Defendants next contend that the court erred in giving plaintiff's instruction six, which reads as follows: "The jury are further instructed that the number of credible and unimpeached witnesses, if any, testifying on the one side or the other of a disputed point is a proper element for the jury to consider *in connection with all other facts and circumstances in*

*evidence* in determining where lies the preponderance of the evidence." (Italics ours.) Defendants made a complaint of this instruction upon the motion for a new trial. Again we repeat that defendants do not complain that the verdict is against the weight of the evidence, and, therefore, there is no point to the instant complaint. Moreover, the trial court, at the instance of defendants, gave a long instruction which told the jury that "the preponderance of the evidence in a case is not necessarily determined alone by the number of witnesses testifying to a particular fact or state of facts," and which also told the jury the various elements that the jury might take into consideration in determining the credibility of witnesses and the weight that should be attached to their testimony. There is no merit in the instant contention.

Defendants next contend that the court erred in giving plaintiff's instruction 7, which reads as follows: "The court instructs the jury that *if they find from the evidence* that the defendants, at the time and just prior to the accident in question were operating the truck at a rate of speed which was greater than was reasonable and proper, having regard to the traffic and use of the way, or so as to endanger the life and limb or injure the property of any person, and that in so doing they were guilty of negligence, and as a direct result thereof the plaintiff was injured, their verdict should be for the plaintiff, provided they believe from the evidence that at the time and immediately prior thereto, plaintiff was in the exercise of that degree of care and caution required of him, as set forth in these instructions." (Italics ours.) Defendants made no point as to this instruction in their argument before the trial court on the motion for a new trial, but they now contend that the instruction assumes that the truck at the time and just prior to the accident was being operated at a speed that was unreasonable. The instruction plainly leaves it to the

jury to determine from the evidence whether or not the speed of defendants' truck was unreasonable.

The last contention raised by defendants is that the court erred in refusing to give to the jury defendants' instruction 1, which reads as follows: "While the plaintiff is only charged with using such care for his own safety as an ordinarily reasonable child of his age, intelligence, experience and capacity would use under like or similar circumstances, still if you believe from the evidence that the plaintiff suddenly ran out from in front of a parked car, and that his doing so, if he did, was the sole proximate cause of his injury and that the conduct on the part of the driver of the truck was not a proximate cause of the injury but merely an occasion of it, then you are instructed that, regardless of whether or not you find that the act of the plaintiff in so running out, if he did, was negligence, you should find that the injury was proximately caused by the conduct of the plaintiff and that it was not proximately caused by the defendants and you should return your verdict for the defendants." Defendants did not complain of the refusal of this instruction upon the oral argument for a new trial before the trial court. They cite no authority in support of the instruction, which directs a verdict. It is subject to a number of serious criticisms. It does not hold the driver of the truck to any degree of care; nor does it permit the jury to pass upon the question as to whether or not the conduct of the driver at the time of the accident and just prior thereto constituted negligence; and it directs a verdict for defendants even though the jury should find that the act of plaintiff in suddenly running out in front of a parked car was not negligence, provided that the jury believed from the evidence that plaintiff "suddenly ran out from in front of a parked car." Defendants state that they make no claim that the boy was guilty of contributory negligence, but they contend that if he sud-

denly ran out from in front of a parked car the driver of defendants' truck would not be negligent in striking the child; in other words, that non-negligence of the driver would follow as a matter of law from the said conduct of the boy, and the jury would have, therefore, no right to pass upon the conduct of the driver. It is hardly necessary to state that defendants misconceive the law that bears upon the facts of the instant case. Plaintiff was eight years of age at the time of the accident, which happened in broad daylight, upon 18th street, a busy thoroughfare, on a beautiful day. The street pavement was dry. There are east-bound and west-bound street car tracks on 18th street and there is an elevated railroad station upon the south side of the street. There is a large department store on the street that extends from the elevated station eastward to the corner of Paulina street. There is a "kind of crossing there across 18th street" in front of the elevated station. There were automobiles parked on the south side of the street. From the south curb of the street to the south rail of the east-bound tracks is about ten feet. The evidence for plaintiff shows that the boy stepped into the street in front of the elevated station, looked to the east and west and then walked northward toward the street car tracks, and that he was in the street car tracks when he was struck; that when the boy stepped out in the street he *was about three feet from the car on his left and an equal distance from the car on his right.*" One witness for plaintiff testified that when the boy reached the street car track defendants' truck was then seventy-five or eighty-five feet to the west of the boy and coming eastward; that the truck was going about thirty miles an hour; that the boy was in the street car tracks when he was struck. Another witness for plaintiff testified that when the boy was out in the street "looking," the truck was then "eighty, ninety feet away from the boy"; that the

boy stopped and backed up a little bit before he was struck. One witness for plaintiff testified that while the boy was going two feet the truck went seventy or eighty feet; that after the accident the boy was "laying on the street car tracks," "about twenty-five or thirty feet away from the place where he was hit"; that the boy "flew in the air" when he was struck. The only witness who testified for defendants as to the accident was the driver of the truck. He testified that "there was no traffic at all on the street" at the time; that he was familiar with the neighborhood; that as he proceeded east on 18th street he was straddling the south rail on the east-bound track; that as he got in the block where the accident happened he "was going in the neighborhood of twenty to twenty-two miles an hour"; that there was no west-bound traffic at the time; that there were cars parked along the the south curb of 18th street; that the cars were parked so that there was "room so in case a man had to pull out he could pull out without pushing the fellow up or in back"; that he first saw the little boy that was injured when he "passed the left front fender of the automobile, running across the street from the south to the north"; that when he first saw the boy he was about twelve feet in front of the truck; that when he noticed the boy was passing the fender "I applied my brakes and killed my motor at the same time"; that he was going about eight miles an hour when he hit the boy; that when the boy "got within a foot and a half of the north-bound rail, he applied a brake to his foot and backed up right away"; that the boy backed up "about two and one-half steps" before he was struck; that the street was dry and he could stop his truck in approximately fifteen feet; that when the boy backed up he turned the truck to the left to avoid hitting him; that after the accident the boy was lying between the rails of the east-bound car tracks; "he was lying in the same direction the rails were running." The

driver admitted that in a deposition he had made he stated that he was going between twenty and twenty-five miles an hour as he approached the place of the accident. It is clear from his testimony that he did not use reasonable and ordinary care to avoid the accident after he first saw the child, and the jury were fully warranted in finding from all of the evidence that the accident was the result of gross negligence upon the part of the driver. ". . . a person operating a motor vehicle along the streets of a city is bound to recognize the fact that children will be found playing in the street and that they may sometimes attempt to cross the street unmindful of its dangers, and the driver owes the children the duty of reasonable and ordinary care under the circumstances." (*Morrison v. Flowers,* 308 Ill. 189, 196.) The court did not err in refusing to give the instruction in question.

No honest, intelligent jury could have found a verdict for defendants under the evidence. Indeed, as we read the record the major defense interposed upon the trial related to the extent of the injuries the child sustained, and defendants have now abandoned their claim that the damages are excessive.

The judgment of the superior court of Cook county should be and it is affirmed.

*Judgment affirmed.*

SULLIVAN and FRIEND, JJ., concur.