**STANCZAK v. PENNSYLVANIA R. CO.**

No. 9650.

United States Court of Appeals
Seventh Circuit.

March 21, 1949.

Rehearing Denied May 16, 1949.

Theodore Schmidt, P. J. Cronin, Robert E. Barrett, John W. Costello, Wendell H. Shanner and William C. Wines, all of Chicago, Ill., for appellant.

Edward B. Henslee, Thomas E. Ryan and Melvin L. Griffith, all of Chicago, Ill., for appellee.

Before MAJOR, Chief Judge, KERNER, Circuit Judge, and WHAM, District Judge.

WHAM, District Judge.

The plaintiff who is the widow and the administratrix of the estate of Edward J. Stanczak, deceased, has brought this suit under the Federal Employers' Liability Act, 45 U.S.C.A. §§ 51–60, and the Safety Appliance Acts, 45 U.S.C.A. §§ 1–13, to recover damages for the conscious pain and suffering and the death of said Edward J. Stanczak, a trainman employed by the defendant, who, while engaged in a switching operation constituting interstate commerce, was killed at 4:10 P.M. on June 21, 1946 when his body was rolled and crushed between the railroad box car then being switched and the loading platform of defendant's freight depot at Downington, Pennsylvania. He was conscious, not to exceed a minute and died from his injuries shortly thereafter. He left a widow, Mary Stanczak, and three children aged 10, 9 and 3. His age was 30 years, 6 months. He was earning approximately $125 every two weeks which he turned over to his wife for family use. His expectancy was 37.9 years.

Plaintiff's complaint charged that while Stanczak was an employee of defendant in performance of his duties within the meaning of the Federal Employers' Liability Act and was in exercise of ordinary care for his own safety the defendant disregarded its duty toward him in one of the following ways:

1. In failing to use ordinary care (a) to provide him a safe place to work; (b) to provide him with reasonably safe appliances with which to do his work.

2. In negligently (c) permitting edge of platform to become rotten, loose, torn and defective; (d) permitting large nails and spikes to protrude from edge of said platform and (e) permitting the top step of the caboose to become worn-out, loose and defective so that a piece of the board of said step gave way and became detached from said step in violation of the Federal Safety Appliance Act, 45 U.S.C.A. §§ 1–13.

Plaintiff further alleges that one or more of said acts of negligence caused Stanczak, while in performance of his duties and while riding on the steps of the caboose, to trip and fall and as a result he was rolled in the close clearance between the platform and the box car sustaining injuries from which he died.

Defendant's answer denies that case arises under the Safety Appliance Act, denies that Stanczak was in exercise of ordinary care for his own safety, denies any and all alleged acts of negligence and that any such act on its part caused Stanczak's injury and death in whole or in part.

Most of the facts are undisputed. The testimony was conflicting as to certain facts including the physical condition of the loading platform and the platform of the caboose. The evidence shows or fairly tends to show the following facts: The freight depot and platform in question were 200 feet long from east to west. The platform proper was 122 feet long, 8 feet wide at its east end and its eastern portion was curved to the left to conform with the railroad tracks which served it. The elevation of the floor of the platform was 4 feet 4 inches from the top of the railroad ties which made it level with the floor of the said box car as it stood on said tracks. The box car was 40 feet long and 9 feet 2 inches wide. The clearance between the edge of the platfrom and the side of the box car in question, when moving, was from 4 to 6 inches. On the curve the clearance was from 4 to 10 inches. The floor of the loading platform was made of wooden planks with the ends extended toward the railroad tracks. The platform had been constructed sometime before 1908

and was worn from much use. Some repairing has been done from time to time. Though the ends of none of the planks extended beyond the general line of the platform some of them were shorter than others, causing an uneven and irregular line or edge. At certain places the ends of the boards were decayed and broken, causing a ragged or jagged edge. At other places the boards were raised up, unlevel in height and irregular in length, causing an uneven, irregular and roughened edge. The edge of the platfrom toward its easterly end was irregular, uneven, rough and, in places, jagged. There were no large nails or spikes protruding from the edge of the platform. There were no signs at or near the platform warning of the close clearances or the condition of the platform but Stanczak had performed switching operations there several times before the day of the accident and was warned that day of close clearances.

At the time in question defendant's crew then consisting of an engineer, fireman and two brakemen, Tramulto and Stanczak (the conductor having remained at a nearby crossing), was engaged in a switching operation to move a box car which stood on the tracks adjacent said platform with its east end 36 feet west of the east end of said platfrom. They approached the car from the east with a locomotive headed westwardly pushing a caboose or cabin car in front of it for coupling to and switching the box car. On the front end of the caboose, being the end farthest from the locomotive, was a platform of wood about 5 feet by 3 feet in size and approximately the height of the floors of the box car and loading platform. Leading down and outwardly from each side of the caboose platform at an angle of 45 degrees were three steps constructed of wood 39 inches in length, 7 inches wide and with a rise between them of 9 inches. The third or lowest step was approximately 27 inches below the level of the loading platform. The outer edge of the third step was, according to one witness, about even with the outer wall of the caboose, and, according to another, 4 inches inside. While moving toward the box car for coupling Stanczak stood on the lowest step

on the front end of the caboose on its side next to the loading platform, facing away from the engineer which was the proper position from which to relay to the engineer the signals required in the coupling operation. To observe the movement and properly to relay the signals to the engineer it was necessary for Stanczak to lean out toward the loading platform beyond the wall of the caboose, using his right hand for signalling and his left to hold to the grab iron on the caboose. This he did, and the coupling was made without incident. Stanczak then changed his position on the lower step of the caboose so as to face toward the engineer and gave the engineer the signal to reverse the direction of the movement. The engineer then turned his face away from Stanczak and began the reverse movement. Tramulto, the other brakeman, had observed Stanczak standing on said lowest step while giving the incoming signals for the coupling. After the coupling was made he saw Stanczak, standing on the lowest step, give the reverse signal. The reverse movement began slowly without a jerk and Tramulto immediately turned and started up the ladder on the box car to adjust the brakes. In a matter of seconds he looked again and Stanczak had disappeared. He climbed down and saw him being rolled between the box car and the loading platform. Tramulto yelled and signalled for the engineer to stop and the movement was stopped immediately. Stanczak dropped down by the tracks and was heard to say, "Please help me." No one saw Stanczak at the time he was first caught between the car and the platform and no one saw how it happened. There was no occasion for him to get on the loading platform but no one saw whether or not he did so. He was a man of careful work habits.

The caboose was of an old type and had been in service since 1919. The edge of the platform of the caboose was decayed and broken in one place causing a space 3 inches long and an inch and a quarter deep at the top of the steps. There was occasion for Stanczak, after he had given the reverse signal, to ascend the steps to the platform of the caboose.

The jury returned a verdict for plaintiff in the sum of $25,000.

As stated in appellant's brief the contested issues on this appeal are:

1. Was there any evidence that any negligence upon the part of the defendant or of defective equipment in the operation of its railroad caused the death of Stanczak?

2. If the case was submissible to a jury at all, was there such error in the reception of irrelevant evidence or incendiary argument as will require reversal for new trial?

3. Was the juror Pappell's perjury such as to vitiate the jury's verdict?

It is undisputed that no one saw what happened to cause Stanczak to be caught between the box car and the platform. In that situation evidence of all surrounding facts and circumstances became admissible in so far as they might, within the limits of reason, be deemed helpful in determining the cause of the accident. To that end the condition of the loading platform and the condition of the caboose platform became material and evidence tending to show such condition admissible. It became a question for the jury as to whether, under all the evidence, there existed at the point of the accident such an uneven edge of the platform that, in combination with the close clearances, it constituted negligence on the part of the employer and proximately caused or contributed to cause Stanczak to be caught between the platform and the box car. Likewise, it was a question for the jury as to whether there was a decayed or worn place on the caboose platform where it formed the landing or fourth step as one climbed the steps, whether such defective condition, if found, constituted negligence on the part of defendant and whether it was the proximate cause or contributing cause of the accident. In their effort to arrive at a solution of the problem as to how Stanczak came to be in the position in which he was found between the platform and the box car the jury was not only required to resolve all disputed questions of fact but was permitted to draw reason-

able inferences and make reasonable deductions from all the facts and circumstances surrounding the occurrence as shown by the evidence. Wilkerson v. McCarthy, 69 S.Ct. 413; Ellis v. Union Pacific R. Co., 329 U.S. 649, 67 S.Ct. 598, 91 L. Ed. 572; Tennant v. Peoria & Pekin Union R. Co., 321 U.S. 29, 64 S.Ct. 409, 88 L. Ed. 520; Johnson v. Southwestern Engineering Co., 41 Cal.App.2d 623, 107 P.2d 417.

■ There being evidence from which the jury may reasonably have inferred that Stanczak came to his death by one of the means suggested above and upon which to base a finding that such means involved negligence on the part of appellant under the circumstances shown by the evidence, it is not within the function of this court to go back of the jury's verdict to consider other possible means not involving negligence on the part of appellant. Lavender v. Kurn, 327 U.S. 645, 66 S.Ct. 740, 90 L. Ed. 916; Tiller v. Atlantic Coast Line R. Co., 318 U.S. 54, 63 S.Ct. 444, 87 L.Ed. 610, 143 A.L.R. 967; Bailey v. Central Vermont R. Co., 319 U.S. 350, 63 S.Ct. 1062, 87 L.Ed. 1444. Neither Eckenrode v. Pennsylvania R. Co., 335 U.S. 329, 69 S.Ct. 91, nor Killian v. Pennsylvania R. Co., et al., 336 Ill.App. 152, 82 N.E.2d 834, to which attention is directed by appellant, is factually similar to the case before the court.

Defendant argues that the freight platform having been maintained a standard distance from the tracks and Stanczak having been acquainted with its proximity to the tracks and having been warned about close clearances on the day he was killed, there was no evidence upon which to predicate liability under the Federal Employers' Liability Act or the Safety Appliance Act but the evidence compels the conclusion that Stanczak's own negligence was the sole cause of his injury and death. Assuming that the distance between the loading platform and tracks was standard construction, though we believe that, too, was a question for the jury, defendant's argument fails to give weight to the evidence that tends to show that the platform was so maintained that it not only created close

clearances of from 4 to 10 inches but had ragged, uneven edges which, under all the evidence, the jury may well have believed was a distinct and negligent departure from standard and was the proximate cause or contributing cause of the accident.

There was evidence that it was necessary for Stanczak to lean out toward the platform from the caboose step to pass signals to the engineer. If the jury believed that to be true it was not unreasonable for the jury to believe further that he or his clothing was caught by the uneven edge of the platform causing him to be pulled or to fall between the platform and the box car. Whether such result, if found, was due solely to his negligence or solely to the negligence of the appellant or to the concurring negligence of both were questions for the jury.

Defendant also argues that the evidence fails to show that the age of the caboose and the defective condition of its platform, if it was defective, had anything to do with the accident. We cannot say that the jury may not have believed, with reason, that the worn and defective place on the caboose platform on the top or landing step constituted negligence on the part of defendant which caused Stanczak to slip or stumble and fall if he returned to the platform, as he had occasion to do, after relaying the reverse signal, causing him to be caught between the platform and box car.

■ We believe there was no reversible error in the admission of evidence tending to show defects in the loading platform west of the location of the box car. Other evidence shows the location of the box car with reference to the platform from which the jury would have no difficulty in determining the portion of the edge of the platform that was involved in the accident and which might in any event constitute proximate cause.

■ Appellant seeks reversal on ground that the argument of plaintiff's counsel before the jury was so inflammatory in character as to be prejudicial. An analysis of the arguments by counsel for plaintiff to which objections were made leads to the conclusion that they were not of such in-

flammatory character as to require reversal for new trial. Indeed, it does not appear that any material harm resulted. The court promptly sustained the objections of counsel when made. The verdict is lower in amount than the facts would warrant when the value to his widow and children of the continuance of decedent's life is considered. Some of the remarks objected to were recriminatory in character in that they were called forth by express or inferential charges by appellant's counsel that plaintiff's counsel had attempted to mislead the jury and had dealt improperly with witnesses. Comments about the condition of the loading platform and caboose, though extreme, had some basis in the evidence in the record. Comments about the manner in which witnesses had been handled, though improper, were called forth by counsel for defendant's critical remarks directed toward the conduct of plaintiff's counsel and plaintiff's witnesses. We do not consider this case to be so close upon all the facts, as contended by appellant, as to warrant a reversal on the theory that improper arguments by plaintiff's counsel may have caused a verdict for plaintiff when it otherwise might have been for defendant. The trial court was in position to follow the arguments of counsel, observe the manner of counsel and evaluate the effect upon the jury. His judgment that the arguments were not prejudicial and would not warrant a new trial should not be disturbed on the record before the court.

During the examination of juryman Pappell on his voir dire the court asked, "Have you or any member of your family ever filed claim or brought suit against anyone for injuries or damages?" Answer, "No." He was accepted as a juror. Later, but before verdict was returned, counsel for appellant learned that said juror had a suit for personal injuries then pending against the Checker Taxi Company. After receiving this information counsel made no effort to inform the court or seek a discharge of the jury before the verdict had been returned but, after unfavorable verdict, relied in his motion for a new trial upon the failure of the juror to answer truthfully. A hearing was held by the court at which the juror testified

that at the time he answered said question he did not know his claim had been filed in court but supposed it would be adjusted out of court. The attorney who had filed the suit for the juror said he had not told the juror of its being filed. The court found the juror guilty of contempt of court and attempting to obstruct justice. Nevertheless, the court overruled defendant's motion for new trial. Do these facts warrant a reversal for new trial?

 The record is not convincing that the juror intentionally failed to answer the court's question truthfully. It would appear more likely that he did not comprehend the scope of the question or that he was guilty of failing to listen carefully and thus failed to understand its purport. A thoughtful answer would have disclosed the information the court sought. The trial judge, in exercise of his discretion, overruled the motion for a new trial. In Illinois the law seems to be that the true test in such case is not whether the prospective juror answered truthfully the question put to him, but, "Has the petitioner been prejudiced in the case?" Kuzminski v. Waser, 314 Ill.App. 438, 41 N.E.2d 1008, 1010; Maher v. New York C. & St. L. R. Co., 290 Ill.App. 267, 8 N.E.2d 512; People v. Beacham, 358 Ill. 373, 193 N.E. 205; Swan et al. v. Boston Store of Chicago, 191 Ill.App. 84; Pienta v. Chicago City Ry. Co., 208 Ill.App. 309; Edwall v. Chicago, R. I. & P. Ry. Co., 208 Ill.App. 489. Authorities in many other jurisdictions are in accord. Raub v. Carpenter, 187 U.S. 159, 23 S.Ct. 72, 47 L.Ed. 119; O'Brien v. General Accident, Fire & Life Assurance Corp., 8 Cir., 42 F.2d 48; Berger v. United States, 295 U.S. 78, 55 S.Ct. 629, 79 L.Ed. 1314; Pearson v. Gardner Cartage Co., 148 Ohio St. 425, 76 N.E.2d 67; State v. Cleary, 40 Kan. 287, 19 P. 776; Suggs v. State, 46 Okl.Cr. 340, 346, 285 P. 985. The determination as to whether complaining party has been so prejudiced is within the sound discretion of the trial court. Pearson v. Gardner Cartage Co., supra; Raub v. Carpenter, supra; People v. Beacham, supra.

 The court, too, may well have believed that counsel for appellant, instead

of informing the court and seeking the discharge of the jury immediately upon learning the facts, took a chance upon a favorable verdict. The law is well established that a party cannot gamble with the possibility of a verdict and thereafter, when the verdict proves unfavorable, raise a question he might have raised before verdict. Union Electric Light & Power Co. v. Snyder Estate Co., D.C., 15 F.Supp. 379. The court did not abuse its discretion in overruling the motion for a new trial on ground that juror answered untruthfully on his voir dire.

Finding no reversible error in the record the judgment is affirmed.