DAVID SCHULZ, Plaintiff-Appellee, *v.* ROCKWELL MANUFACTURING COMPANY, ROCKWELL INTERNATIONAL CORPORATION, Defendant-Appellant.

Second District   No. 81—474

Opinion filed July 16, 1982.—Rehearing denied September 2, 1982.

VAN DEUSEN, J., dissenting.

Robert A. Fredrickson, of Reno, Zahm, Folgate, Lindberg and Powell, of Rockford, and Thomas E. Kluczynski, of Epton, Mullin, Segal and Druth, of Chicago, for appellant.

Bernard P. Reese, Jr., of Reese, Reese and Bagley, of Rockford, for appellee.

JUSTICE LINDBERG delivered the opinion of the court:

Plaintiff, David Schulz, brought an action for product liability in the circuit court of Winnebago County, asking damages for an injury which he claimed was caused by the unreasonably dangerous condition of a powerized miter box manufactured by defendant, Rockwell Manufacturing. The jury rendered a verdict in favor of the plaintiff in the amount of $400,000. Rockwell appeals, claiming that the trial court erred in denying Rockwell's motion for a directed verdict; in giving instruction 11(a) proferred by plaintiff; and in failing to grant Rockwell's motion for a new trial on grounds of juror prejudice. The facts relevant to our disposition are as follows.

Plaintiff brought a claim under a product liability theory seeking damages for an injury he sustained while operating a powerized miter box manufactured by the defendant. At the time he sustained his injury, Schulz was using the powerized miter box to cut lengths of wood to be used in window frames. In order to do this, Schulz placed the wood on the table and with his right hand brought the miter box's rotating blade down through the piece of wood. The blade is activated by use of a trigger located on a pistol-grip handle. Schulz had cut about 200 pieces, when he caught his right hand on the blade, severing his thumb and two fingers. Plaintiff claimed at trial that the saw portion of the miter box was defective in design and unreasonably dangerous because it did not have a wrap-around blade guard and was equipped with a manual brake instead of an automatic brake.

After the close of evidence, the judge held a jury instruction conference. Over defendant's objections, the judge agreed to give plaintiff's instruction 11(a) to the jury.

The jurors were instructed and deliberated for approximately two hours. On November 5, 1980, the jury returned a verdict in favor of plaintiff in the amount of $400,000. On December 3, 1980, the attorney for defendant learned that the husband of one of the jurors, Ellen Bowers, had, in 1979, applied for employment at MGD Goss Printing, a division of Rockwell. He later filed a lawsuit against Rockwell under the Illinois Fair Employment Practices Act. On December 5, 1980, it was learned that another juror, Ed Benning, had been fired by Goss

Printing in 1970. Defendant filed supplemental post-trial motions based upon these facts seeking an evidentiary hearing and/or a new trial due to the alleged prejudice of these jurors.

In support of these motions, defendant presented affidavits concerning the employment record of the two men and the affidavit of one member of the jury. Janet Liskey, the employee relations representative for Rockwell, stated that Benning's termination report indicated that Rockwell was dissatisfied with his "effectiveness, attitude, and lack of respect for the work force and his fellow superiors." In a separate affidavit, Ms. Liskey stated that Steve Bowers was turned down for employment at Rockwell due to a back condition, that Mr. Bowers subsequently filed a charge against Rockwell with the IFEPC and that the charge was eventually resolved in favor of Rockwell. Ms. Liskey also testified by affidavit that Steve Bowers had listed the name of his wife as Ellen Bowers.

Marie A. Mayfield, one of the jurors, testified by affidavit that the attorney for Rockwell had asked each of the jurors in her group of four (which included Mr. Benning), if they had ever worked for Rockwell or if they had any contact or connection with Rockwell. She testified that all of the jurors in her group of four answered no to that question. She also testified that during deliberations Mr. Benning had offered the opinion that the plaintiff was entitled to an award of $2,000,000, and that plaintiff's injury would make it difficult for him to find other employment.

The court denied plaintiff's post-trial motions and also denied a motion by the plaintiff seeking pre-judgment interest. The defendant appeals, and plaintiff cross-appeals.

During trial the defendant moved the court to grant a directed verdict on grounds that no evidence had been introduced tending to show that it was reasonably foreseeable that the plaintiff would forego the use of a safety feature built into the machine in question. The testimony adduced at trial indicates that the miter box was equipped with a manual coasting brake. The use of this brake would have, in all likelihood, prevented the injury complained of here. Plaintiff testified that at the time of the accident he was not using the coasting brake.

Expert testimony indicated that the design of the coasting brake was such that it had to be operated by applying pressure with the thumb. The firmer the pressure, the more quickly the blade would stop. The expert testified that a fair degree of pressure was needed to stop the blade and that this would cause the operator's hand to become fatigued over the course of a work day. He further testified that

it was predictable that the operator would not, under these circumstances, use the safety device. We find that this testimony was sufficient to allow the matter to go to the jury as the trial judge did in this case.

A directed verdict should be entered only where it appears that "all of the evidence, when viewed in an aspect most favorable to the opponent, so overwhelmingly favors movant that no contrary verdict based on the evidence could ever stand." *Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 510.

In essence, the defendant's motion for directed verdict invoked the doctrine of misuse. It is defendant's contention that the plaintiff's failure to utilize the thumb brake was the proximate cause of his injury and that the miter box provided, at most, a condition which allowed but did not cause that injury.

■ Illinois law is clear that the conduct of an operator of machinery is a defense to a product liability action only where it is shown that such conduct amounts to a misuse which was not reasonably foreseeable by the manufacturer. (*Anderson v. Hyster Co.* (1979), 74 Ill. 2d 364; *Derrick v. Yoder Co.* (1980), 88 Ill. App. 3d 864, 410 N.E.2d 1030.) In the absence of such proof, the causal connection between a defective machine and the injury remains unbroken. (*Lewis v. Stran Steel Corp.* (1974), 57 Ill. 2d 94.) Even a showing that plaintiff used the machine incorrectly or carelessly does not bar recovery where that use is reasonably foreseeable by the manufacturer. *Lancaster v. Jeffrey Galion, Inc.* (1979), 77 Ill. App. 3d 819, 396 N.E.2d 648.

■■ Foreseeability is normally a question for the finder of fact. (*DeArmond v. Hoover Ball & Bearing* (1980), 86 Ill. App. 3d 1066, 408 N.E.2d 771.) While a manufacturer is not expected to foresee every possibility which might conceivably occur, he is held to a duty to foresee those uses which are objectively reasonable to expect. (*Winnett v. Winnett* (1974), 57 Ill. 2d 7; *Barr v. Rivinius, Inc.* (1978), 58 Ill. App. 3d 121, 373 N.E.2d 1063.) In *Anderson v. Hyster Co.*, the supreme court addressed a situation similar to the one at bar. In that case a defendant argued that plaintiff's injury had resulted solely from the failure of a forklift operator to activate a foot brake. The court held that the expert testimony adduced at trial was sufficient to support a jury verdict for the plaintiff. That testimony included opinions to the effect that although the forklift was capable of being operated safely, various human factors made it likely that the operators would become confused.

■ The case of *Sanchez v. Black Brothers Co.* (1981), 98 Ill. App. 3d 264, 423 N.E.2d 1309, relied upon by defendant, held only that evi-

dence should be admitted on the issue of possible misuse and did not set a standard for directed verdict in such a case or involve an assessment of the sufficiency of the evidence presented on this point. Nor does *Flores v. U.S. Industries, Inc.* (1980), 81 Ill. App. 3d 944, 401 N.E.2d 979, mandate reversal in this case. In upholding the trial court's order granting a directed verdict to defendant, the appellate court in that case commented on what it considered to be insufficient expert testimony. In this case, however, the record contains sufficient testimony on the point of foreseeability to create a question of fact for the jury. The trial court correctly denied defendant's motion for a directed verdict.

Defendant also appeals on the ground that plaintiff's instruction 11(a) should not have been given to the jury. Defendant contends that this instruction is overly broad and vague in its description of the alleged unreasonably dangerous aspects of the product. The instruction reads, in its entirety:

"The plaintiff claims that he was injured while using the electric miter box and there existed in the electric miter box at the time it left control of the defendant a condition which made the electric miter box unreasonably dangerous in one or more of the following respects:

A. There was a failure to design the machine in such a manner as to avoid or minimize the risks to the users of said machine.

B. There was a failure to provide necessary safety features on said machine.

C. That the defendant knew or should have known the potential hazards of the use of the machine in its present condition by an operator and should have made adequate provision to protect the operator in that regard and failed to do so.

The plaintiff claims that one or more of the foregoing was a proximate cause of his injuries.

The defendant denies that any of the claimed conditions existed in the electric miter box at the time the machine left its control; denies that any claimed condition of the electric miter box made the machine unreasonably dangerous; denies that any claimed condition of the electric miter box was a proximate cause of the plaintiff's injuries; and

The defendant further denies that plaintiff was injured or sustained damages to the extent claimed."

Instruction 11(a) is a summary of the pleadings filed and the issues raised by both parties in this case. Such an instruction is

proper so long as it is succinctly stated without undue repetition or undue emphasis. (*Signa v. Alluri* (1953), 351 Ill. App. 11, 113 N.E.2d 475.) In *Signa,* the appellate court held that the practice of reading the entire complaint as an instruction to the jury constituted prejudicial error. The court noted that the sheer length of such an instruction could confuse a jury, but placed even more emphasis on the inequity of putting this one-sided version of a lawsuit into the mouth of the trial court.

In *Mattyasovszky v. West Towns Bus Co.* (1975), 61 Ill. 2d 31, the supreme court commented on such an "issue" instruction which it found to be improper. Emphasizing the need, in such an instruction, for conciseness and the absence of repetition the court noted:

> "The issue instruction in this case contained more than 700 words of direct quotation from the plaintiff's complaint. In that instruction each of the phrases 'negligently and carelessly' and 'with utter indifference to or conscious disregard for' was repeated eight times in describing the conduct of the defendant. This instruction was improper." 61 Ill. 2d 31, 38.

■ Unlike the instruction discussed in *Mattyasovszky* the text of instruction 11(a) is a fair summary of the pleadings. It is not overly long, containing just over 200 words. Further, the defendant makes no reference to, nor did we discover, any point in the instruction which misconstrues or overemphasizes either set of pleadings.

A similar case was addressed by the appellate court in *Gallee v. Sears Roebuck & Co.* (1978), 58 Ill. App. 3d 501, 374 N.E.2d 831. There, the court upheld an instruction which read that the plaintiff claimed "he was using [a] ladder in a manner usual and customary and in a manner which was reasonably forseeable by the defendants." (58 Ill. App. 3d 501, 502, 374 N.E.2d 831, 833.) Commenting that the instruction did no more than inform the jury of plaintiff's claim and the defendant's response in a neutral tone, the court found no error.

*Darby v. Checker Co.* (1972), 6 Ill. App. 3d 188, 285 N.E.2d 217, is offered by defendant as a case in which the appellate court reversed on the basis that an instruction given was overly broad. However, careful reading of that case indicates that the court found prejudicial error in the giving of an instruction which assumed a fact in evidence when no evidence had actually been adduced on that point. The trial court did not err in giving plaintiff's proferred instruction 11(a) in the case at bar.

Upon ascertaining that two of the 12 jurors sitting in this case had had some contact with Goss Printing, a division of Rockwell International, defendant moved the court alternatively to allow an evi-

dentiary hearing concerning the alleged jury improprieties and for a new trial. The defendant submitted affidavits including one from a member of the jury, in support of this motion. Plaintiff submitted no counteraffidavits. During arguments on the motion, the trial judge asked for briefs on the issues of how a record of the *voir dire* could be reconstructed and under what circumstances a jury may be impeached. Eventually, the court denied defendant's motion for an evidentiary hearing and for a new trial. It is defendant's contention that the court erred in refusing to conduct a hearing and to consider the submitted affidavits and further erred in its failure to grant a new trial.

■ Plaintiff, in his brief, raises a question as to whether the affidavits submitted by Rockwell can properly be considered by this court in assessing the need for a new trial on account of possible juror prejudice. Plaintiff cites Supreme Court Rule 323(c) as the only method by which the events of the *voir dire* in this case may be reconstructed for the purposes of review. Rule 323(c) provides that:

> "If no verbatim transcript of the evidence of proceedings is obtainable, the appellant may prepare a proposed report of proceedings from the best available sources, including recollection. It shall be served within 14 days after notice of appeal is filed. Within 28 days after the notice of appeal is filed, any other party may serve proposed amendments or his proposed report of proceedings. Within 7 days thereafter, the appellant shall, upon notice, present the proposed report or reports, and any proposed amendments to the trial court for settlement and approval. The court, holding hearings if necessary, shall promptly settle, certify, and order filed an accurate report of proceedings. Absent stipulation, only the report of proceedings so certified shall be included in the record on appeal." Ill. Rev. Stat. 1979, ch. 110A, par. 323(c).

It is defendant's contention that the trial court's refusal to grant an evidentiary hearing and its denial of subpoenas and discovery motions work to preclude the possibility of compiling such a bystander record. We agree. The dissent comments that there is insufficient evidence in the record to overcome the presumption of correctness which attaches to a trial court's decision. However, any deficiency in this record is attributable to the trial court's refusal to grant discovery or hold further hearings. We do not believe that the discretion vested in a trial court permits it to convert a presumption of correctness into an impenetrable cloak of infallibility. We are reluctant to deny review where a trial court by its own order has created an inadequate record.

The defendant further argues that the case law establishes that an appellate court may consider affidavits in lieu of a bystander record where an issue of juror prejudice is involved.

Our supreme court has reviewed allegations of prejudicial false testimony given during *voir dire* without recourse to either a verbatim transcript or a Rule 323 bystander report on two occasions. In *Pekelder v. Edgewater Automotive Co.* (1977), 68 Ill. 2d 136, the supreme court affirmed a trial court's order granting a new trial. The court relied on the trial court's recollection that it had asked each prospective juror whether he or she had any pending lawsuits and the juror's testimony at a post-trial hearing to the effect that at the time of the trial he was a party to a lawsuit. Likewise, in *Department of Public Works & Buildings v. Christensen* (1962), 25 Ill. 2d 273, the court was without a verbatim transcript. The court noted that although the trial judge stated that he had no recollection of contents of *voir dire,* he accepted counsel's statement that each juror had been asked whether he had dealings with the State of Illinois. The court noted that an affirmative answer to such a question would not have disqualified a juror and declined, in the absence of a more specific showing or perjury or prejudice to reverse the trial court's denial of a new trial. We note that *Christensen* predates Rule 323(c) and its predecessor, former Rule 36—1(c) (Ill. Rev. Stat. 1965, ch. 110, par. 101.36(1)(c)). However, these rules served merely to codify the common law requirement, and so this case is of precedential value. See Comments of the Illinois Supreme Court Rules Committee to Rule 36—1 (53 Ill. Bar J. 18 (1964)).

Plaintiff, in urging that a Rule 323 report is indispensable to review of this case, relies heavily on this court's opinion in *Hehir v. Bowers* (1980), 85 Ill. App. 3d 625, 407 N.E.2d 149. In that case this court held that it could not determine whether a juror had lied in the absence of a transcription or "any substitute for a report of proceedings." (85 Ill. App. 3d 625, 629, 407 N.E.2d 149, 152.) The opinion makes no reference to Rule 323(c) and thus implicitly admits, as do *Pekelder* and *Christensen* of other methods of recreating the *voir dire.* Here, the defendant has provided an affidavit of a juror who claims to recall the question regarding Goss Printing as well as affidavits substantiating the interested status of jurors Benning and Bower. Defendant's affidavits were the only documents submitted to the court.

◼ In *Pekelder,* discussed earlier, the supreme court promulgated a two-part standard for the granting of a new trial due to false statements made by jurors during *voir dire.* A new trial is required if it is

established (1) that a juror answered falsely on *voir dire,* and (2) that prejudice resulted therefrom. Both part of the *Pekelder* test appeared to have been met in this case. Further, if true, the affidavits presented by defendant give evidence of a situation with a much more powerful prejudicial potential than the fact situations in the case upon which plaintiff relies in opposing the motion for a new trial. For instance, in *Pekelder* the court upheld a court order granting a new trial where a juror had lied about the fact that he was a party to a lawsuit. In *Christensen,* a false answer was given in response to a question as to whether or not the juror had had "dealings with the State of Illinois." In *Kuzminski v. Waser* (1942), 314 Ill. App. 438, 41 N.E.2d 1008, the juror answered falsely that she had not been involved in any auto collisions. The facts alleged here are strikingly different. The affidavits presented by defendant suggest that two of the 12 jurors were pointedly biased against Rockwell in particular. Further, it seems that one of these jurors played a particularly active role in the jury deliberations. The factual allegations contained in these affidavits must be accepted as true in the absence of any counteraffidavits contradicting them. (*Denton Enterprises, Inc. v. Illinois State Toll Highway Authority* (1979), 77 Ill. App. 3d 495, 396 N.E.2d 34; *People v. Mickow* (1978), 58 Ill. App. 3d 780, 374 N.E.2d 1081.) Nothing in the record before us supports the dissent's hypothesis that the trial court was relying on his own personal recollection of *voir dire* to contradict those affidavits.

Accordingly, we remand for a new trial due to apparent prejudice on the part of two jurors in the original trial.

In his cross-appeal, plaintiff contends that the trial court erred in denying his post-trial motion for prejudgment interest dating back to the time of his injury. Illinois law provides for the recovery of prejudgment interest in a tort action based upon fraud, trespass, or conversion, where there has been an unreasonable and vexatious delay of payment due. The Illinois state courts have not ruled on the availability of prejudgment interests in personal injury actions. However, the Court of Appeals for the Seventh Circuit, ruling in a wrongful death action, interpreted Illinois law as allowing prejudgment interest only where called for by statute or by agreement of the parties. (*In re Aircrash Disaster Near Chicago* (7th Cir. 1981), 644 F.2d 594.) The relevant statute is the Illinois Interest Act (Ill. Rev. Stat. 1979, ch. 74, par. 1 *et seq.*), which provides: "Creditors shall be allowed to receive [interest] at the rate of five (5) per centum per annum for all moneys after they become due on any bond, bill, promissory note, or other instrument of writing; on money lent or advanced for the use of an-

other; on money due on the settlement of account from the day of liquidating accounts between the parties and ascertaining the balance; on money received through the use of another and retained without the owner's consent; and on money withheld by unreasonable and vexatious delay of payment." Ill. Rev. Stat. 1979, ch. 74, par. 2.

■■ ■ The only section of the statute conceivably applicable to the case at bar is section 2, which allows interest in the event of vexatious and unreasonable delay of payment due. It is clear that under Illinois law the conduct of litigation does not constitute such an unreasonable or vexatious delay. (*Edens View Realty & Investment, Inc. v. Heritage Enterprises, Inc.* (1980), 87 Ill. App. 3d 480, 408 N.E.2d 1069.) The trial court was correct in its denial of plaintiff's motion for prejudgment interest.

For the foregoing reasons the order of the circuit court of Winnebago County is affirmed in part, reversed in part, and remanded.

Affirmed in part, reversed in part and remanded.

HOPF, J., concurring.

JUSTICE VAN DEUSEN, dissenting:

The majority's opinion sets aside a judgment in the amount of $400,000 entered in favor of the plaintiff on a jury verdict, and remands the matter for a new trial on the sole ground that there was apparent prejudice on the part of two jurors, namely Ellen M. Bowers and Edward Benning. In his order denying defendant's post-trial motion, the trial court specifically rejected the defendant's contention that juror prejudice merited the granting of a new trial.

As the majority opinion points out, the supreme court has established a two-part standard for granting a new trial due to jurors' false testimony during *voir dire*. A motion for a new trial should be denied unless it is established (1) that a juror answered falsely on *voir dire* and (2) that prejudice resulted therefrom. (*Pekelder v. Edgewater Automotive Co.* (1977), 68 Ill. 2d 136, 139.) Implicit in the majority's opinion reversing the trial court's denial of the post-trial motion is a determination by this court that the trial judge's denial of the motion was an abuse of his discretion. I find no such abuse of discretion on the part of the trial court.

Defendant did not raise the issue of juror prejudice in its original post-trial motion, but did charge prejudice on the part of juror, Ellen M. Bowers, in its first supplement to its post-trial motion, and charged prejudice on the part of juror, Edward Benning, in its second

supplement to its post-trial motion.

In the two supplements, the defendant asserts, in substance, that Ellen M. Bowers and Edward Benning testified falsely during *voir dire* in that they falsely denied any connection with Rockwell International Corporation or involvement in any lawsuits with Rockwell International or its subsidiaries.

On appeal, the defendant has failed to file a transcript, a factual stipulation, or a bystanders report of the *voir dire* proceedings as required by Supreme Court Rule 323 (73 Ill. 2d R. 323). Defendant has instead attempted to establish a right to a new trial by a set of affidavits.

With reference to the juror, Ellen M. Bowers, defendant submitted a single affidavit in support of its motion. It established that in 1977 the husband of Ellen M. Bowers had applied for employment at MGD Graphic Systems Group, that the rejection of his application prompted him to file a lawsuit against MGD Graphic Systems, a division of Rockwell International. No affidavit or other evidence was submitted to the trial court concerning the nature of any questions put to this juror or of her answers to any questions during the *voir dire*.

Other affidavits established that the other juror, Edward Benning, commenced working for MGD Graphic Systems in 1960; that North American Rockwell, now known as Rockwell International Corporation, took over MGD Graphic Systems in late 1968 or early 1969; and that Edward Benning's employment terminated with MGD Graphic Systems in February 1970 because of his attitude and lack of respect toward fellow workers. The affidavits also asserted that Benning was aware of the acquisition of MGD Graphic Systems by Rockwell International.

An affidavit of Charles Banks, president of Rockwell International Corporation Credit Corporation, established that Banks had interviewed several jurors in the case, including Benning. In the affidavit, Banks stated that during the interview, Benning indicated that he did not like Rockwell tools; that he had formerly worked for Rockwell as a foreman; that he questioned the credibility of Rockwell witnesses; and that he thought the verdict was too low. According to the affidavits, Edward Benning's last contact with MGD Graphic Systems was some 11 years prior to the trial in question.

The defendant filed one more affidavit in support of its contention that Edward Benning answered falsely in *voir dire*. This fourth affidavit of a fellow juror, Maria A. Mayfield, was taken on February 13, 1981, three months after the trial. In her affidavit, Maria Mayfield

stated that during the *voir dire* examination of the four jurors in her group, which included Edward Benning, the attorney for Rockwell International asked each of these four prospective jurors if any of them had ever worked for Rockwell International Corporation or if they ever had any contacts or connection with Rockwell International Corporation and that all of the jurors in that group answered in the negative. The affidavit of Maria Mayfield also indicated that during jury deliberations, Benning had offered the opinion that plaintiff should be compensated in excess of $2 million and that if plaintiff were to lose his job, his disability would make it very difficult to obtain other employment.

Only one affidavit, that of Maria Mayfield, refers to the *voir dire* examination. Other than this affidavit this court of review has no other record of the proceedings at the *voir dire* or during jury deliberations. It is a basic principle of appellate practice that a party who prosecutes on appeal has the duty of presenting to the reviewing court everything necessary to decide the issue on appeal. *Marshall E. Winokur, Ltd. v. Shane* (1980), 89 Ill. App. 3d 551, 552; *Angel v. Angelos* (1976), 35 Ill. App. 3d 905, 907.

While this court has not had an opportunity to examine a report of the *voir dire* proceedings, the trial judge conducted and supervised the *voir dire* of Benning and Bowers. When ruling on the motion for the new trial, he may well have remembered the questions put to the jurors on this subject matter and their answers thereto. Because he was personally present during the *voir dire*, he would not have to accept the affidavit of the juror Mayfield as the unrebutted truth, particularly in view of the fact that it was taken some three months after trial and following an *ex parte* communication with the defendant's representatives. See *Chalmers v. City of Chicago* (1982), 88 Ill. 2d 532, 540-41.

The defendant's failure to present a proper record of the *voir dire* makes it relatively impossible for this court to determine if the trial court abused its discretion in denying the motion, and where the record is lacking, a reviewing court will indulge every presumption favorable to the judgment or order from which the party appeals. *Schranz v. I. L. Grossman, Inc.* (1980), 90 Ill. App. 3d 507, 511.

Furthermore, even assuming that the defendant's affidavits were true and accurate, the defendant has still failed to present sufficient evidence upon which it can be concluded that the trial court abused its discretion in denying the defendant's post-trial motion. Edward Benning never did work directly for Rockwell International Corporation. Therefore, when defendant's counsel asked Benning whether he

had any contact with Rockwell International, Benning may not have realized that his employment by MGD Graphic Systems some 11 years earlier might be considered as sufficient contact to require an affirmative response. Additionally, Benning's opinion, given during jury deliberations, concerning the size of the verdict that should be rendered in favor of the plaintiff, and his statement that in view of the plaintiff's injury, plaintiff would have difficulty securing employment if he lost his job, could not be considered as any real indication of prejudice which may have affected the verdict reached by the jury. Under these circumstances, the trial court could have properly concluded that Benning did not give false testimony at the *voir dire,* and secondly, that even if the answer could be considered false, no prejudice resulted therefrom.

I would affirm the trial court's judgment in favor of the plaintiff.